IDALIA REALTY & DEVELOPMENT COMPANY, Plaintiff, in Error, v. W. W. NORMAN.

Division One, February 28, 1911.

1. **LEASE: Tenancy for Years.** A lease for years must have a certain beginning and a certain ending. If the end is fixed with certainty, or by some reference or call to a certainty by which the period is made to determine, then it is a lease for a term of years; but if the end be not certain, or cannot be made certain by reference to a certainty, then the lease does not create a lease for a term of years.

2. ————: ————: **Until Sawmill is Removed.** Where the owner of land leased it for "the term of five years, free of rent, except taxes, together with the privilege of renting the land at a yearly rent of twenty-five dollars, after the expiration of this contract until the sawmill thereon is removed, this contract to end in five years from this date," the lease by its terms did not create a tenancy for years, because of the uncertainty in the end of the term. "Until the sawmill is removed" is neither certain, nor can it be made certain.

3. ————: ————: ————: **Rents Reserved: Tenancy at Will.** But courts incline to presume a tenancy from year to year of farm lands, where the parties do not express a contrary intention, especially where an annual rental is reserved; and when that is done they will not apply the doctrine of a tenancy at will to be determined at any time upon notice.

And accordingly, since an annual rent was reserved in said lease, it is held that the tenancy created was one from year to year, after the five-year period expired, and it can be terminated only in the way and by the notice provided by statute for terminating tenancies from year to year.

4. ———; Tenancy at Will. A tenancy at will implies the will of both landlord and tenant. If it can be determined at the will of the landlord, it can also be determined at the will of the tenant.

Error to Stoddard Circuit Court.—*Hon. J. L. Fort*, Judge.

AFFIRMED.

*N. A. Mozley* and *Wammack & Welborn* for plaintiff in error.

(1) Defendants' holding under the contract, after the expiration of five years, was a mere tenancy at will and was terminated by the notice to quit. Corby v. McSpadden, 63 Mo. App. 648; McClain v. Abshire, 72 Mo. App. 390; Hobart v. Murray, 54 Mo. App. 255. (2) A lease which does not have a time certain for its termination is void, and a person holding under it is a mere tenant at will. A lease which is to terminate upon the removal of a sawmill, there being no time fixed at which the sawmill was to be moved, is such a lease. Corby v. McSpadden, 63 Mo. App. 648; McClain v. Abshire, 72 Mo. App. 390.

*James F. Green* and *Ernest A. Green* for defendant in error.

(1) The lease offered in evidence under its terms constituted a tenancy for years and entitled the plaintiff to remain in possession of the premises in controversy until his mill was removed therefrom. Harley v. O'Donnell, 9 Pa. Co. Ct. 56; Hammond v. Barton, 93 Wis. 187; Colclough v. Carpeles, 89 Wis. 239; Arnot v. Alexander, 44 Mo. 25; Flagg v. Dow, 99 Mass.

18; 24 Cyc. 961b; McClain v. Abshire, 72 Mo. App. 390; Clarke v. Spaulding, 20 N. H. 313; Patterson v. Glass Co., 63 Mo. App. 173; Boot & Shoe Co. v. Gannon, 50 Mo. App. 642; Bldg. Co. v. National Bank, 5 Mo. App. 333; s. c., 71 Mo. 58; Conservative Realty Co. v. Brewing Association, 133 Mo. App. 261; 1 McAdam on Landlord and Tenant (3 Ed.), chap. 19, sec. 168, p. 584, also sec. 170, p. 588; Doe v. Miles, 1 Stark, 181, 4 Camp. 373; Crouch v. Parker, 40 Barb. 94. (2) Defendant had a right to renew the lease for a term of one year in any event from the expiration of five years, provided his mill remained there that long, and he thereby became a tenant from year to year and entitled to sixty days' notice before the beginning of the next year. Drake v. Board of Education, 208 Mo. 540; Diffenderfer v. Public Schools, 120 Mo. 447; Hammon v. Douglass, 50 Mo. 442; DeLaney v. Flanagan, 41 Mo. App. 651; Blackmore v. Boardman, 28 Mo. 420; Quinette v. Carpenter, 35 Mo. 502; Hunt v. Bailey, 39 Mo. 257; Finney v. St. Louis, 39 Mo. 177. (3) The notice to quit, served on defendant, was not sufficiently explicit and positive to require him to move, even though his tenancy had been only at will. Ayers v. Draper, 11 Mo. 548; Brewing Co. v. Miller, 124 Mo. App. 384; Taylor's Landlord and Tenant (7 Ed.), sec. 483, pp. 415-416.

LAMM, J.—Ejectment—the *locus,* a forty, viz., the southeast quarter of the southeast quarter of section 12, township 25, range 11, in Stoddard county. Ouster as of January 2, 1905. Damages, $100.

The answer was a general denial.

Plaintiff, cast below and adjudged to take nothing by its writ (defendant going hence without day and recovering his cost), sued out a writ of error and the case is here on that writ.

S. B. Hunter is the common source of title. He owned the property on the 16th day of August, 1899,

when he executed a contract under which defendant took, held and now holds possession. That contract has dual features. It is a sale of certain property and a lease of other property and for convenience's sake will be called a "lease." That lease was acknowledged at the time and subsequently spread of record on a dispute arising over its terms, viz., April, 1903. Hunter was owner and landlord on the 28th of October, 1904. On that date he served on Norman a written notice to quit. Subsequently plaintiff was incorporated and took over Hunter's real estate in Stoddard county, including the *locus in quo*—Hunter owning all the corporate stock except two shares held one each by Mrs. Hunter and a Mr. Harty. There are several buildings on the forty and there is evidence that its monthly rental value is fifty-six dollars. The lease is a contract for the sale of timber on other lands and a privilege to cut, together with a tram road, a right of way for the same on those lands, with certain reservations by Hunter. There is also a letting of the land in question. The lease, omitting signatures, runs as follows:

"This agreement made and entered into this 16th day of August A. D. 1899, by and between Stephen B. Hunter of the county of Scott, and State of Missouri, party of the first part, and W. W. Norman, of the county of Cape Girardeau, and State of Missouri, party of the second part. Witnesseth, that the said party of the first part, in consideration of the sum of thirteen hundred dollars to him paid by the said party of the second part, has this day sold unto the said party of the second part, does by these presents, sell, assign, and transfer unto the said party of the second part, all timber, tram road, and right of way, on the following lands, to-wit: (Note: Here follows the description of lands in sections 18, 19, 30 and 31 in township 25, range 12 in Stoddard county). The said first party reserves the right to clear and fence lands

in said section eighteen, and to deaden timber on all the above lands after August 1, 1902. The said first party also leases unto the said second party for the term of five years, free of rent, except the taxes, all of the southeast quarter of the southeast quarter of section twelve, in township twenty-five, range eleven, in said county and State, except two houses, which are used by tenants, cultivating lands at or near Hunter's switch, together with the privilege of renting the last named lands at a yearly rent of twenty-five dollars per year, after the expiration of this contract until mill is removed. This contract to end in five years after this date. This contract is subject to a former contract made with J. B. Livesay by S. B. Hunter and signed to Piatt B. D. G. Co.

"In testimony whereof, the said parties, to these presents, have hereunto, and also to copy thereof, set their respective hands at ————, on the day first above written."

Among other questions raised is one predicated of the terms of the notice to quit. That notice was served by the sheriff, and, omitting signatures, reads:

"To W. W. Norman:

"You are hereby notified that inasmuch as you have had a reasonable time, since the expiration of the lease existing between us, by and under which you have had the possession, and still continue in the possession thereof, after the expiration of said lease aforesaid, of the following described real estate belonging to me, situate in the county of Stoddard and State of Missouri, to-wit: The southeast quarter of the southeast quarter of section twelve, in township twenty-five north, of range eleven east, in which to remove your saw mill, factory, goods, chattels, and other personal property therefrom; to quit the possession of said premises, and to remove your property and effects therefrom, and to deliver the possession of said premises to my agent Mr. A. L. Harty, on or before the 1st

day of January, 1905, together with all the messauges and appurtenances thereunto belonging.

"Dated this 28th day of October, 1904."

Defendant has a saw mill on the premises, and did have a "veneer plant" there, but the latter burned down. He is running the saw mill occasionally and a little store, and his employees occupy the houses on the land, say, ten in number. He cut and used up the timber covered by the terms of his lease, finishing that within the five years prescribed. At the time of executing the lease defendant owned other timber in the neighborhood, but has since sold both the land and the timber. After the contract he bought other timber in the stick, which he is cutting and sawing, claiming possession of the *locus* under the renewal right in his lease. He has released possession of all the real property except the forty in dispute and the right of way for his tram road. Defendant has paid no rent on the forty after the five-year term expired, but has been ready and willing to pay, has notified Hunter he would pay on demand, but no demand has been made. The saw mill had formerly been located near Sikeston on land mortgaged to Hunter. On foreclosure of the mortgage Hunter surrendered the mill to Norman and he moved it on the forty in dispute, where it still remains.

At the close of the case, plaintiff asked the following instruction:

"The court instructs that the lease contract under which defendant claims the right to hold the premises sued for began on the 16th day of August, 1899, and ended by force of its own provision five years thereafter, and that the clause contained in said contract which reads: 'Together with the privilege of renting the last named lands at a yearly rental of twenty-five dollars per year after the expiration of this contract until mill is removed,' is wholly inoperative to create a greater estate or right of possession in defendant

than a mere tenancy at will which was terminated by the notice offered in evidence prior to the institution of this suit.''

That instruction was refused. Plaintiff saved the point and now assigns error on that refusal. Defendant asked no instructions.

Plaintiff puts all eggs in one basket by submitting the case on the proposition that defendant's holding, after the expiration of the five-year lease term, was a mere tenancy at will which was terminated by the notice to quit—in other words, that a lease not having a time certain for its termination is void, and the person holding under it is a mere tenant at will; that as there was no time fixed at which the saw mill was to be moved, the lease is void, *qua* a lease, and the law stamps upon it the character of a tenancy at will.

*Contra*, for defendant the contentions are three:

*First.* That the lease constituted a tenancy for years and entitled defendant to possession until he removed his mill.

*Second.* If that be not so, then under the right to renew defendant had the right to a renewal for at least one year after the expiration of the five-year term, that by remaining in possession he became a tenant from year to year and entitled to sixty days' notice before the beginning of the next year.

And, *third,* If that be not so, then the notice to quit was not as explicit and positive as required by law, even for a tenancy at will; therefore, it was inoperative as a notice to quit and the suit was premature.

Plaintiff does not agree to the foregoing *trio,* by or large, in whole or part. In a reply brief its counsel develop counter contentions, to be presently considered in the course of this opinion.

The foregoing is sufficient outline statement of the facts and propositions in judgment.

I. The lease reads that, for the payment of taxes as rent, Hunter "leases" to Morman for the term of five years (that is, commencing on the 16th day of August, 1899) the forty, with certain reservations. Then follows the clause on which the controversy hinges, viz., "Together with the privilege of renting the last-named lands at a yearly rental of twenty-five dollars . . . after the expiration of this contract *until the mill is removed.*"

Counsel raise no question whether the clause is a lease or a mere contract for the renewal of a lease. They do not ask the case to ride off on any of the nice distinctions indulged by courts in determining such question. They treat the provision as requiring no new or other lease if it is to be construed, in the light of correct legal principles, as contemplating or agreeing to a tenancy for years. We, therefore, adopt that view of it in disposing of the first question, namely: Are the terms apt and operative to create (or call for) a tenancy for years?

We have come to the conclusion the tenancy is not for years. This, because: The old learning on the matter throws a dry light and remains a live verity of modern law. Attending to that, thus saith Littleton: "Tenant for term of yeares is where a man letteth land or tenements to another for terme of *certaine* yeares, and after the number of yeares that is accorded between the lesser and the lessee." [1 Coke on Littleton (19 London Ed.), sec. 58-43b.] In commenting on the phrase, "of certaine yeares," Sir Edward says (45b): "For regularly in every lease for yeares the terme must have a certaine beginning and a certaine end. . . . And Littleton is here to be understood, first, that the yeares must be certaine when the lease is to take effect in interest or possession. For before it takes effect in possession or interest, it may depend upon an incertainty, viz., upon a possible con

tingent before it begin in possession or interest, or upon a limitation or condition subsequent. Secondly, albeit there appeare no certainty of yeares in the lease, yet if by reference to a certainty it may be made certaine it sufficeth, *Quia id certum est quod certum reddi potest.*" He then proceeds to give many quaint hypothetical cases which would make the term certain and its period determinate, and others having a contrary effect and obnoxious to the certainty of term required in a tenancy for years—of the latter, this: "If the parson of D. make a lease of his glebe for so many yeares as he shall be parson there, this cannot be made certaine by any meanes." Flintoff says (2 Flintoff on Real Property, 203): "Every estate which must expire at a period certain and prefixed, by whatever words created, is an estate for years. And therefore this estate is frequently called a term, *terminus,* because its duration or continuance is bounded, limited and determined; for every such estate must have a certain beginning and certain end." That author, in commenting, also applies the maxim, That is certain which can be made certain. Preston says (2 Preston on Conveyancing, p. 158 *et seq.*): "In regard to leases for years, the text-books seem to propound the rule that every lease for years shall have a certain commencement and a certain continuance. It is essential that the time of duration of every lease for years shall be measured by fixed periods, as by years, months, weeks, days, hours, minutes, or the like." And again (159 *et seq.*): "When it is said, . . . in the language of Lord Coke, 'regularly in every lease for years, the term must have a certain beginning and a certain end,' this is to be understood in its legal and technical sense. The only circumstance required in limitations of terms for years is, that a precise time shall be fixed for the continuance of the terms; so that when the commencement of the term is ascertained, the period of determi-

nation, by effluxion of time, may be known with certainty. In the first place a term may be limited to commence from the date of the deed, or from a future period, or upon an event, or upon such one of several events as shall first happen." Speaking to the same point, Washburn says (1 Washburn on Real Property [5 Ed.], 470): "The only circumstance required in these limitations of terms for years is, that a precise time shall be fixed for the continuance of the term, so that when the commencement of the term is ascertained, the period of determination by effluxion of time may be known with certainty."

In applying the foregoing definitions and principles, the rule seems to be that if the term is to commence on the happening of an event uncertain as to time (for example, the completion of a house), it will be a good tenancy for years when possession has been taken after the event. This, provided the end of the term is fixed with certainty or by some reference or call to a certainty thereby making the period determinate. But if the end be not certain or cannot be made certain by the maxim *Id certum est quod,* etc., then a tenancy for years is not created, for the lease violates the definition of such tenancy in essential matter.

In Western Transportation Company v. Lansing, 49 N. Y. 499, it was held that a lease for fifteen years at a yearly rental of $30 "with privilege of keeping and occupying said lots for such further time, after the expiration of said term, as said party of the second part shall choose or elect, yielding and paying therefor the same rent," did not create a tenancy for years because of the uncertainty in the end of the term. The same conclusion was reached in Murray v. Cherrington, 99 Mass. 229, where one of the uncertainties was in the duration of the term which arose from a stipulation "that if, after two years from the time when the lessee should move into the house, the lessor

should wish to live there, he might do so, and the lessee might then retain, if he should desire, certain rooms, 'for such a term as may be agreeable to us both.' "

In Corby v. McSpadden, 63 Mo. App. 648, the term ran "until the party of the first part is prepared to improve the ground with new buildings." The question to be decided was what kind of a lease that uncertainty created and the lease was held void for any other purpose than a tenancy at will. See Hobart v. Murray, 54 Mo. App. l. c. 255.

Cases relating to uncertainty in the commencement of a term, which uncertainty has been removed by the happening of an event and where the end of the term is not left at the caprice, whim or will of either party, are not in point. Many of them may be found. For example: Hammond v. Barton, 93 Wis. 183; Colclough v. Carpeles, 89 Wis. 239; Clarke v. Spaulding, 20 N. H. 313; Western Boot and Shoe Co. v. Gannon, 50 Mo. App. 642; McClain v. Abshire, 72 Mo. App. l. c. 399. Such is the general doctrine (1 McAdam Land. and Ten., sec. 168, p. 646), and that doctrine is bodied forth in the old learning heretofore quoted from Coke and Preston.

In our case nothing could be more uncertain than the end of the term. The uncertainty indulged in is the very sum of the whole brood of uncertainties. What does the phrase, "until the mill is removed," mean? By whom is it to be removed? On what contingency is it to be removed? Suppose it be never removed, what then? Does the word "mill" mean merely the physical structure or does it mean a going saw mill? If the former, would it be *removed* if left lifeless to rot on the ground? If the latter, did the parties contemplate that Norman bought timber from Hunter and when that timber was cut and manufactured with reasonable diligence into lumber or otherwise, the mill

was to be moved, or did they mean that it was to be moved when Norman sawed that timber and other timber he then owned, or timber that he might thereafter own, or when timber that might be brought to his mill to be sawed for a price or on the shares was exhausted, or when all the accessible saw-timber in the region was exhausted? But it is idle to speculate when it is out of the question for speculation to result in any sensible working hypothesis. The parties voluntarily left the matter in impenetrable obscurity and uncertainty, without guide-post to a right goal of interpretation. We leave it where they left it.

If the body of the lease had shown the end of the term by the use of language indicating that the lease was for a definite purpose and when that purpose was subserved the lease was at an end, as in Conservative Realty Co. v. St. Louis Brewing Association, 133 Mo. App. 261, cited and relied on by counsel for defendant, we would have a different case to deal with. There the lease was its own interpreter. That case falls within a class dealt with in the books, where the lease tells its own rounded story. For instance, if A, owing B $1000, demises property to him for a term which will produce that amount at a certain named rental, or where the term becomes determinate by using the rental as a divisor and a total sum named as a dividend, thereby resulting in a definite term by way of a quotient, or other cases where the lease terminates by a collateral and named or implied event, which, when it happens, clearly conserves and fulfills the object of the tenancy.

II. The next question is: Was it a tenancy at will or from year to year?

If we should conclude that the tenancy was at the will of Norman, it would follow as a sequence that it was also at the will of Hunter; for wills run in pairs, in tenancies at will, by implication of law. Says Coke

(supra, 55a, sec. 68) : " 'Tenant at will is, where lands or tenements are let by one man to another, to have and to hold to him at the will of the lessor,' etc. It is regularly true, that every lease at will must in law be at the will of both parties, and therefore when the lease is made, to have and to hold at the will of the lessor, the law implyeth it to be at the will of the lessee also; for it cannot be only at the will of the lessor, but it must be at the will of the lessee also. And so it is when the lease is made to have and to hold at the will of the lessee, this must be also at the will of the lessor; and so are all the bookes, that seeme prima facie to differ, cleerly reconciled."

The rule announced by Sir Edward is the rule applied in modern law. [1 Wood on Land. and Ten. (2 Ed.), p. 44; Corby v. McSpadden, supra, l. c. 152-3.] Here Hunter, at his own will, assumed to terminate the tenancy. He might do that under Sir Edward's rule, even although we might well conclude the contract points to the exercise of the will of Norman. We have no difficulty on that score, but the question whether the tenancy is at will or from year to year is not so easily solved. The Corby Case is not conclusive on that matter; for the lease in judgment in that case was a city lease and the statute and the common sense of the thing make a distinction between leases in the city and leases of farming lands. [R. S. 1909, secs. 7882-7883.] In the case of agricultural lands crops have to be reckoned with; and equities arise the law undertakes to settle. This is not a case where the defendant wrongfully entered on the land, nor is it a case where he, in disobedience of the plain terms of his written lease, wrongfully held over. The holding of Norman has at least the grace of holding over on an implied invitation of his landlord extended to him in his lease, however ineffectual that invitation may be in point of strict law to create a tenancy for years. To apply the doctrine of a tenancy at will to be termi-

nated between seasons on notice, would likely result harshly and unjustly. I have read of a rhyming adage on the walls of the Third Provincial Tribunal at Berlin, which is applicable here as translated liberally by a scholar, viz.:

"If two opinions split the way,
Hear what your conscience has to say."—
(Schwankst zwischen Neigung du und Pflicht,
Horch auf, was deyn Gewissen Spricht).

But—and somewhat closer to the point—Wood says (1 Wood on Land. and Ten. [2 Ed.], p. 49, *et seq.*): "In order to convert a tenancy for an uncertain period, into a tenancy from year to year, there must be a reservation of annual rent, and unless there is such a reservation the tenancy is prima facie only a tenancy at will." And again (pp. 52-3): "It may be said that prima facie leases, indefinite as to the term, merely create a tenancy at will; and only a reservation of annual rent converts them into leases from year to year. . . . And the courts latterly are inclined to construe all leases at will at an annual rent, as leases from year to year"—this latter doctrine, however, in the absence of an express provision creating only a tenancy at will. "The courts are desirous to presume a tenancy from year to year where the parties do not express a different intention," says Lord DENMAN, C. J., in Bartow v. Cox, 11 Q. B. 122. "But," he continues, "here they have expressed it." And in Western Transportation Co. v. Lansing, supra, FOLGER, J., refers to the same doctrine in this way: "For the courts do not willingly construe demises, where no certain term is mentioned, to be tenancies at will, and incline to hold them to be from year to year, especially where an annual rent is reserved." (Citing Jackson v. Bryan, 1 J. R. 332.) In his case an annual rent was reserved. In the case at bar an annual rent was reserved, viz., $25. And while the cases are not in accord, yet we think the doctrine announced

above is safer and more likely to result in meeting the rounded ends of justice in such cases as the instant one. It gives time to untie and not cut the knot binding them together, thereby to disentangle their relations in an orderly fashion with as little damage as may be. We have been cited to no case in Missouri, and know of none, in the way of that conclusion. Accordingly, we rule that under the facts in judgment the tenancy created was one from year to year. It follows that it could be terminated only in the way and by the notice provided by statute for terminating tenancies from year to year.

III. Counsel insist the notice was inoperative, in that, though a tenancy at will be held to exist, it was not sufficiently explicit and positive to require defendant to move. They cite us to Ayres v. Draper, 11 Mo. 548; Columbia Brewing Co. v. Miller, 124 Mo. App. 384; Taylor's Land. and Ten. (7 Ed.), sec. 438. But we need not pursue the matter. The notice somewhat lacks grammatical sequence and coherence in a sentence, for that the latter part does not syntactically correspond with the first part, yet we doubt much if defendant could or did misunderstand it. It takes the trained and analytical mind of a lawyer or grammarian to pick flaws with it. It must be subjected to the *acid test* to make it bad. But, were we to hold it to verily be that formidable looking and sounding thing yclept (among the ultra learned in college. towns in Missouri) an *anacoluthon,* yet (to use the venerable language of the law) it has now become *functus officio;* hence, this court need not meddle with it. If another notice is served it will not be likely to be so rich in mere *whereas and recital* amidships as to obscure the sense and blunt the point of it.

The premises all considered, the judgment is affirmed. All concur. Except *Valliant, J.,* who is absent.