**FRANCIS et al. v. SUPERIOR OIL CO.**

**No. 1748.**

Circuit Court of Appeals, Tenth Circuit.

March 20, 1939.

J. B. Dudley and T. Murray Robinson, both of Oklahoma City, Okl. (Luther Bohanon, Lynn Adams, and John H. Hal-

ley, all of Oklahoma City, Okl., on the brief), for appellants.

Streeter B. Flynn, of Oklahoma City, Okl. (Robert M. Rainey and Rainey, Flynn, Green & Anderson, all of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This is an action instituted by J. L. Francis, Lottie J. Francis, his wife, and Laird Oil Corporation against Superior Oil Company and Ernest J. Lippert to quiet title to a tract of land located in the city of Oklahoma City. The facts are not in dispute. Francis and wife owned the land, and they executed an oil and gas lease to Harry J. Brown, agent for Superior Oil Company, on May 25, 1932, for a consideration of $500 in cash and specified royalty interests. The instrument was recorded on June 4th, and later assigned to Superior Oil Company. It was provided in paragraph 3 of the lease that, except as provided in paragraph 11, it should remain in force for a term of five years from the date on which the lessee could legally and peaceably enter upon and drill the premises, and so long thereafter as oil, gas, casinghead gas, or casinghead gasoline should be produced, and that if operations for the drilling of a well should not be commenced within one year from the date on which the lessee could legally and peaceably enter upon and drill the premises the lease should terminate as to both parties unless the lessee should pay or tender annually a rental of $1 per acre; and it was provided in paragraph 11 that, notwithstanding anything to the contrary, if the lessee should commence drilling operations at any time while the lease was in force, it should remain in force and its terms should continue as long as such operations were prosecuted, and if production should result then as long as it should continue. Francis and wife executed an oil and gas lease to Laird Oil Corporation on March 21, 1936, covering the same land; and at the same time and as a part of the same transaction, the parties entered into a contract in writing but it is unnecessary to detail its provisions. At the time such lease and such contract were entered into, Laird Oil Corporation had both actual and constructive notice of the earlier lease to Superior Oil Company.

At all times prior to March 24, 1936, the drilling of a well for oil and gas on the premises covered by the leases was prohibited by ordinance or ordinances of the city; but on that date an election was held at which it was voted to include an area which embraced these premises within a zone in which development for oil and gas was permitted. On the following morning, Superior Oil Company placed an employee on the premises; he began to clear the land; and a tool house was placed upon it during the afternoon. This suit was filed between 12 and 1 o'clock that day; and on April 3d, plaintiffs commenced the construction of a fence around the property. Trouble ensued, and the employee of Superior Oil Company was arrested and confined in jail. Except for the time that employee was in jail, employees of Superior Oil Company were on the premises continuously from March 25th to the signing of the contract on April 13th, hereinafter referred to. On March 26th, Laird Oil Corporation made application to the Building Superintendent of the city for a permit to drill a well on the premises; and on March 30th, Superior Oil Company made like application. Both applications were denied and appeals were taken to the Board of Adjustment. On April 13th, the two companies entered into a development contract in which it was provided that they should endeavor to obtain a permit issued to them jointly; that in the event such permit was issued, Superior Oil Company should drill a well; that the oil should be run to some major pipe line company and the proceeds, less the cost of drilling and operation, should be held to await the final determination of the conflicting claims of the two companies under their respective leases; and that the contract should not be construed as a compromise or settlement of the controversy or as a waiver of any rights had or claimed by either party. The permit was issued; the well was drilled; oil was produced; and a fund in excess of the cost of drilling and operation accumulated.

While the suit was pending, Francis conveyed to his wife all of his right, title, and interest in the property, and later died. The suit was dismissed as to Francis and Lippert. The Superior Oil Company suc-

ceeded through merger and consolidation proceedings to the rights of Superior Oil Company in the lease, and was substituted as defendant. The court sustained the lease and quieted the title under it. Lottie J. Francis and Laird Oil Corporation appealed.

The two contentions urged for reversal of the decree are (1) that the lease to Superior Oil Company is void because of the uncertainty of its terms, and (2) that it violates the rule against perpetuities and the statutes prohibiting restraints on alienation of property. The asserted invalidity arises from the provision that the lease should remain in force for a term of five years from the date on which the lessee could legally and peaceably enter upon and drill the premises and so long thereafter as any one or more of the enumerated minerals should be produced. The contentions are so related that they may be considered together.

Section 32 of Article 2 of the Constitution of Oklahoma, Okl.St.Ann., provides that perpetuities and monopolies are contrary to the genius of free government and shall not be allowed. Section 11756, Oklahoma Statutes 1931, 60 Okl.St.Ann. § 31, provides that, except as provided in section 11759, 60 Okl.St.Ann. § 34, the absolute power of alienation cannot be suspended by any limitation or condition for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition; section 11758, 60 Okl.St.Ann. § 33, provides that the suspension of all power to alienate the subject of the trust, other than power to exchange it for other property to be held upon the same trust, or to sell it and reinvest the proceeds to be held under the same trust, is a suspension of the power of alienation within the meaning of section 11756; section 11759 provides that a contingent remainder in fee may be created on a prior remainder in fee, to take effect in the event that the persons to whom the first remainder is limited shall die under the age of twenty-one years, or upon any other contingency by which the estate of such persons may be determined before they attain majority; and section 11760, 60 Okl.St.Ann. § 35, provides that subject to the rules of that chapter, a freehold estate, as well as an estate for years, may be created to commence at a future day, an estate for life may be created for a

term of years, and a remainder limited thereon, that a remainder of a freehold or an estate for years, either contingent or vested, may be created expectant on determination of a term of years, and that a fee may be limited on a fee upon a contingency which if it should occur must occur within the period therein prescribed.

■ An oil and gas lease covering land in Oklahoma containing the usual provisions that, for a term of years or for a term of years and as long thereafter as oil or gas shall be produced in paying quantities, the lessee or his assigns shall have the exclusive right to go upon the premises for that purpose and drill for and produce such minerals, and that when produced a part thereof shall be the property of the lessee and a part reserved to the lessor, creates in the lessee a present interest or estate in the real estate which is an incorporeal hereditament, sometimes called a profit à prendre. Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 3 A.L.R. 352; Nicholson Corporation v. Ferguson, 114 Okl. 16, 243 P. 195; Callahan v. Martin, 3 Cal.2d 110, 43 P.2d 788, 101 A.L.R. 871; Alexander v. King, 10 Cir., 46 F.2d 235, 74 A.L.R. 174; Commissioner of Internal Revenue v. McKinney, 10 Cir., 87 F.2d 811.

■ It is settled that an ordinary lease of tenancy for years must be certain in respect to commencement, duration, and termination, or be capable of being made certain by reference to some collateral event or thing which in itself is certain. Boston Clothing Co. v. Solberg, 28 Wash. 262, 68 P. 715; F. H. Stoltze Land Co. v. Westberg, 63 Mont. 38, 206 P. 407; Idalia Realty & Development Co. v. Norman, 232 Mo. 663, 135 S.W. 47, 34 L.R.A.,N.S., 1069; Beeson v. La Vasque, 144 Ark. 522, 223 S.W. 355; Willis v. Thomas, Tex.Civ. App., 9 S.W.2d 423. And where such a lease bears a specific date and is for a fixed duration but fails to provide in express terms when it shall commence, it is to be regarded as beginning on the date of its execution unless a contrary intention fairly appears from its provisions. Keyes v. Dearborn, 12 N.H. 52; Gay Manufacturing Co. v. Hobbs, 128 N.C. 46, 38 S.E. 26, 83 Am.St.Rep. 661; Blackburn v. Muskogee Land Co., 6 Ind.T. 232, 91 S.W. 31.

■ The language contained in the lease, and the background against which it was executed, must be borne in mind in de-

termining whether the lease is invalid. The drilling of a well on the premises was forbidden by authority of law. But development in a nearby zone where drilling was permitted was increasing. The field was expanding. Production was coming nearer. Interest on the part of Francis and his wife and other owners of land in that area was increasingly intense. It was hoped and believed by some that the restrictions would be removed at some time in the future and the drilling of wells in that area allowed. With that background, it was the manifest intention and desire of the parties to make and enter into a valid lease which would bring about the drilling of a well within the time fixed after the restrictions should be removed, with financial gain to both of them. The language in the lease, the correspondence passing between the parties, and the promptness with which Superior Oil Company acted after the election, all point convincingly to that purpose. Neither fraud nor other perverted stratagem is suggested.

█ The lease provided that the lessors "have this day granted and leased and do hereby grant, lease, and let * * *" the premises; and further that the lease should "remain in force for a term of five years from the date the lessee may legally and peacefully enter upon and drill on said leased premises, and so long thereafter as oil, gas, casinghead gas, casinghead gasoline, or any of them is or can be produced from the leased premises", thus indicating clearly an intention that it should become effective immediately upon its execution. The lease took effect at once. The lessee had from that time a present interest or estate in the land in the nature of an incorporeal hereditament or a profit à prendre, but no well could be drilled until the restrictions were removed. The parties did not know, and in the very nature of things they could not know, whether the restrictions would be removed, and if so when; but in many instances where no time is fixed in a contract within which an act shall be performed or a condition brought about, the law intervenes and supplies a reasonable time for that purpose. It must be presumed that the parties executed the lease with the contemplation that the restrictions would be lifted within a reasonable time or the contract would terminate. Such contemplation was implicit in the contract.

There is nothing contained in the instrument or the circumstances attendant its execution which indicates even remotely that they intended or purposed to create a right in perpetuity, or an objectionable restraint upon the alienation of property.

It was held in Gay Manufacturing Company v. Hobbs, supra, that a contract for the sale of standing timber which provided that the vendee should have a term of five years within which to cut and remove it, commencing at the time the vendee began to manufacture the timber into wood or lumber, so far partook of the nature of a lease as to require application of the rules of law relating to leases for a term of years, and that it was void for uncertainty as to the time at which the term should begin. But the pronouncement that such a contract is void for such uncertainty was subsequently disapproved in Hawkins v. Goldsboro Lumber Co., 139 N.C. 160, 51 S.E. 852; and the case does not represent the majority rule. Courts have not been in accord as to the precise nature of the interest created by such a contract. While diverging in respect to the nature of the interest created, it has been held many times that where no time is fixed for the grantee to begin cutting the timber, or the manufacturing of it into lumber, or boxes, as the case may be, the law will imply a reasonable time for that purpose; and that the instrument is not void for uncertainty as to the time at which it will begin. Bunch v. Elizabeth City Lumber Co., 134 N.C. 116, 46 S.E. 24; Hawkins v. Goldsboro Lumber Co., supra; Flagler v. Atlantic Coast Lumber Corporation, 89 S.C. 328, 71 S.E. 849; Cunningham v. Atlantic Coast Lumber Corporation, 117 S.C. 240, 109 S.E. 145; Brown v. Surry Lumber Co., 113 Va. 503, 75 S.E. 84; Gex v. Dill, 86 Miss. 10, 38 So. 193; Hall v. Eastman, Gardiner & Co., 89 Miss. 588, 43 So. 2, 119 Am.St.Rep. 709; Cherry Lake Turpentine Co. v. Lanier Armstrong Co., 10 Ga.App. 339, 73 S.E. 610. See, also, Fletcher v. Lyon, 93 Ark. 5, 123 S.W. 801. It is urged that the reasoning enunciated in these cases is inapposite here because there the parties themselves could make the contingency occur on which the lease or instrument was predicated, and hence they, in effect, contracted to see that it would take place, while here the contingency was entirely beyond the control of the parties. The distinction is

without difference in principle. In either instance the law embodies in the contract a reasonable time within which the contingency shall occur or the contract terminate. Here the contingency did occur within a reasonable time, and the lessee acted immediately thereafter to fulfill the terms of the lease.

The decree is affirmed.