Joy KILBOURNE, Appellant,

v.

Bruce FORESTER and Eleanor Forester,
Respondents.

No. 25443.

Kansas City Court of Appeals,
Missouri.

Dec. 7, 1970.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 1, 1971.

Application to Transfer Denied
April 12, 1971.

Robert B. Langworthy, Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, for appellant.

Lawrence M. Berkowitz, Michael G. O'Flaherty, Kansas City, for respondents.

SHANGLER, Presiding Judge.

The issue presented to the trial court, and now to us by this appeal, is: which of the parties is entitled to the possession of certain premises, the owners, respondents Bruce and Eleanor Forester, or appellant Joy Kilbourne who, with her son, entered under a written lease and has continued in occupancy since? This issue, separately tried to the court upon a stipulated record, was raised by Count II of respondents' counterclaim to appellant's defamation action and decided favorably to respondents. This judgment was designated as final for purposes of appeal. Hence this review.

It was stipulated that respondents Forester were the owners in fee simple absolute of premises known as 4500 Summit Street in Kansas City, Missouri and that on June 25, 1966, Joy Kilbourne (and her son) entered into possession of the floor apartment of that building under a written agreement (stipulated Exhibit A) with respondents' agent and has remained in continuous possession. This agreement, dated June 25, 1966, provided: "(I)t is recognized and agreed that the decoration of the floor apartment at 4500 Summit will be completed by Mrs. Joy Kilbourne and son. Small deductions for such decoration shall

be withheld monthly from the rent payment. (Amount of actual expenditure is not known at this date). *It is also agreed * * * that the apartment is leased for one year for the amount of $80.00. The lease is renewable at the end of the year period.* Rental date starting about July 6 or July 7 or earlier depending upon completion of decoration. It is also * * * agreed that the upkeep of the lawn will be maintained by Mrs. Joy Kilbourne and son." (Emphasis supplied.) That the amount payable as rent during the term of the lease was intended as $80.00 per month, and not per year, is assumed by the parties, borne out by the evidence, and adopted by us as a premise. Nor can it be of any consequence for our purposes whether July 6 rather than July 7 (as one or the other party suggests) is the date when tenancy under the lease commenced and from which the year term is to be measured.

During the period between July 22, 1966 and the date the court entered judgment, either personally or by her attorney, appellant regularly tendered monthly rent checks to respondents' agents and, just as regularly, these were returned to appellant's attorney. The reason ascribed for the refusals was, in essence, that since September 1, 1966, respondents had not recognized any right in appellant to the possession of the premises.[1]

On June 3, 1967, by letter from her attorney, appellant Kilbourne made such a monthly tender and also gave notice of her "exercise of the option to renew the lease for an additional year, July 7, 1967 to July 7, 1968, on the same terms". In short time, respondents' attorney replied, returning the tender and reavowing the refusal of Mr. and Mrs. Forester to recognize "any leasehold rights in Mrs. Kilbourne (or) * * * any rights in her to extend or renew said alleged lease for the period indicated." Mrs. Kilbourne's subsequent notices of her exercise of "all rights she may have to renew the lease * * * for an additional year, July 7, 1968 to July 7, 1969" (and thereafter) "for the period of July 7, 1969 to July 7, 1970" were refused recognition by respondents for the same reason.

On July 30, 1969, while this counterclaim was pending, as a prelude to filing a complaint in unlawful detainer, respondents caused a "Notice to Quit" to be served on appellant which, by its terms, required her to yield up possession of the premises within ten days. The record does not disclose what disposition was had of the unlawful detainer action; presumably, it was eventually dismissed.

In rendering judgment for possession in favor of the owners Forester, the court found that "Plaintiff entered possession of * * * the premises on July 7, 1966, pursuant to the terms of the written lease dated June 25, 1966, which lease by its terms expired no later than July 6, 1968, as a matter of law. * * * Since no later than July 6, 1968 (appellant Kilbourne) has been in unlawful possession of the aforementioned premises, and (respondents Forester) have been entitled to possession of the aforementioned premises". The trial court ruled correctly.

Appellant, however, insists the trial court erred because the landlord-tenant relationship created by the lease agreement continued to subsist even to January 8, 1970, the day the court gave judgment of possession to respondents. That is because the lease,

---

1. The stipulated facts, quite properly, are confined to the one issue raised by Count II of the counterclaim: the right to possession of the respective parties under the lease. It was also the single issue tried by the court. There is no contention that the agreement of June 25, 1966, was not actually, and at the least, a lease for one year. There would seem to have been no apparent purpose in respondents' return of the tendered rental payments during the year. These refusals are undoubtedly explained by Count I of the counterclaim, pleaded but not tried, which seeks possession of the alternative theory that appellant has wilfully and unlawfully withheld possession since September 1, 1966. Count I does not plead a lease at all.

concededly for a term of one year from (we shall say) July 7, 1966, vested in appellant the right to renew, a right which she maintains not only was "exercisable by her at the end of every yearly period", but which she did in fact exercise by timely notice and by her continued performance under its terms.

Appellant argues further that even if she was entitled to exercise the option to renew for one additional year only, until July 6, 1968, rather than perenially, the resultant holding over after July 6, 1968 gave rise to a year to year tenancy which could have been lawfully terminated only by sixty days' written notice as prescribed by Sec. 441.050, V.A.M.S. Or, if not from year to year, then a tenancy from month to month or at sufferance eventuated, either of which could have been lawfully extinguished only by a month's written notice as prescribed by Sec. 441.060(1), V.A.M.S. Since the only notice appellant ever received from respondents was the "Notice to Quit" which required the premises of her within ten days, not thirty or sixty days, she concludes that her tenancy has never been lawfully terminated and possession of the premises is still rightfully hers. We conclude, however, that neither Sec. 441.050, V.A.M.S., nor Sec. 441.060(1), V.A.M.S., but only Sec. 441.070, V.A.M.S. governs the relationship between the parties.

"The relationship of landlord and tenant is defined in general terms as that which arises from a contract, express or implied, by which one person occupies the real property of another with his permission and in subordination to his rights, the occupant being known as the 'tenant' and the person in subordination to whom he occupies as the 'landlord.'"[2] When the es-

tate created by the lease has a certain beginning and a certain end, it is a tenancy for a term,[3] and when that term is fixed in units or multiples or divisions of a year, it is an estate for years.[4] It is sufficient, "so far as the requirement of definiteness of duration is concerned, that the duration of the estate is either precisely stated or can be exactly computed at the time when the estate became possessory".[5]

By these criteria, the lease contract between the parties was for a definite term, fixed at one year. It was made no less certain by any possibility that the provision: "The lease is renewable at the end of the year period" authorized a perpetuity of leases (as appellant contends) rather than only a second lease by one renewal, as it plainly means. Because the law discourages perpetuities, and does not favor covenants for continued renewals, "a covenant which does not plainly imply or express a perpetual renewal will not be construed to give this right". Diffenderfer v. v. St. Louis Public Schools, 120 Mo. 447, 25 S.W. 542, 544; Drake v. Board of Education, 208 Mo. 540, 106 S.W. 650, 654; Annotation: "Lease—Second or Perpetual Renewal", 31 A.L.R.2d 607, 623, Sec. 9. The renewal provision of the lease between these parties is in general terms; it contains none of the language customarily used to express an intention for perpetual renewals, and certainly none can be implied. Such a general provision will be construed as authorizing but one renewal of all the terms of the old lease except that of the option of renewal itself. Krall v. Light, 240 Mo. App. 480, 210 S.W.2d 739, 746 [13]; Albany Savings Bank v. Gigliotti Motor Sales, 162 Misc. 468, 295 N.Y.S. 779. By the explicit terms of the lease, therefore,

2. Johnson v. Simpson Oil Company, Mo. App., 394 S.W.2d 91, 96 [3, 4]; McNeill v. McNeill, Mo.App., 456 S.W.2d 800, 804 [4]; American Law of Property, Sec. 3.2, p. 177; 51C C.J.S. Landlord and Tenant § 1, p. 31.

3. Idalia Realty & Development Co. v. Norman, 232 Mo. 663, 135 S.W. 47, 49;

49 Am.Jur.2d, Landlord and Tenant, Sec. 66, p. 107.

4. Restatement, Property, Sec. 19, p. 48; Thompson on Real Property, Vol. 3, 1959 Replacement, Sec. 1017, pp. 10–11.

5. Restatement, Property, Sec. 19, Comment a, p. 48.

the certain end of appellant's estate and tenancy was no later than July 6, 1968. "When the term of a lease is to end on a precise day, there is no occasion for a notice to quit previously to bringing an ejectment, because both parties are equally apprised of the determination of the term." Young v. Smith, 28 Mo. 65, 69. Sec. 441.-070, V.A.M.S. which relieves the necessity for notice to quit from or to a tenant whose term is to end at a certain time adopts this rationale and expresses the common law rule in so doing. Ray v. Blackman, 120 Mo.App. 497, 97 S.W. 212, 214 [3]; Underhill, Landlord and Tenant, Vol. 1, Sec. 111, pp. 155–156; 49 Am.Jur. 2d, Landlord and Tenant, Sec. 69, p. 111.

■ Appellant, however, in disobedience of the plain terms of her written lease, has held over since June 6, 1968, and now claims because the landlord had knowledge of it, her occupancy has ripened into a tenancy either from year to year, month to month, or at sufferance. It is true that where a tenant for years holds over *with the consent of the landlord,* the tenancy will be one from year to year, or for a shorter period, according to the intention of the parties (which is to be found in each case as a question of fact). Delaney v. Flanagan, 41 Mo.App. 651, 655–656.[6] Any such tenancies may not be terminated unless the appropriate statutory notice has been given. Minton v. Steinhauer, 243 Mo. 51, 147 S.W. 1014, 1016 [4]. "But no character of tenancy * * * (including that of year to year) can arise without *some form of consent,* either express, inferred or implied, on the part of the landlord. The mere holding over by the tenant does not of and in itself create a new tenancy. It gives the landlord the option to

renew the lease. No new term is created until the owner, *in some manner,* recognizes the tenancy as existing * * * No new tenancy can arise without a 'grant or contract denoting simple permission' ". Millhouse v. Drainage Dist. No. 48 of Dunklin County, Mo.App., 304 S.W.2d 54, 59 [18, 19].[7] But because a tenant who holds over *without* such permission is a wrongdoer, the landlord may exercise his other option and bring an ejectment to recover possession without delay or notice. Mastin v. Metzinger, 99 Mo.App. 613, 74 S.W. 431.

■ It is clearly inferable from the evidence that *from the first* respondents knew of appellant's continued occupancy beyond the expiration of the lease term.[8] From this knowledge, appellant would have us find that a tenancy resulted from the laches of the landlord. But as the landlord-tenant relationship arises only from consent, the mere occupancy of land—even, in these singular circumstances, an occupancy prolonged for months—with the knowledge but without the consent of the owner, does not create a tenancy. Center Creek Mining Co. v. Frankenstein, 179 Mo. 564, 78 S.W. 785, 786; Young v. Ingle, 14 Mo. 426, 427. At that, respondents' knowledge was anything but acquiescent. During the entire holding-over period, by monthly letter, they expressly repudiated appellant's claim of right of continued possession and refused all tenders of rent as well. Respondents' counterclaim for possession, pending during that entire period, was the most explicit expression possible that respondents were turning them out as wrongdoers, not acknowledging them as tenants.

6. See also: Bircher v. Parker, 40 Mo. 118, 119; Quinette v. Carpenter, 35 Mo. 502, 504; Finney's Trustees v. City of St. Louis, 39 Mo. 177, 180; Underhill, Landlord and Tenant, Vol. 1, Sec. 97, pp. 139 et seq.

7. State ex rel. State Highway Commission v. DeMarco, Mo.App., 445 S.W.2d 379,

387 [9]; Annotation, Holding Over—Landlord's Consent, 55 A.L.R. 286.

8. And, under these exceptional circumstances, that is true, whether (as appellant alternatively and tentatively argues) her possession under the lease expired on July 6, 1967 or, as we have determined, on July 6, 1968.

Appellant suggests that although respondents spurned the rent, they derived other benefits from her continued occupancy and thereby impliedly consented to a new tenancy. It had been stipulated that appellant had redecorated the apartment and had done yard work since June 25, 1966 and that although respondents' agents were aware of this, they did nothing to discourage her from continuing to do so. The stipulation, however, did not indicate whether any of that work was done after July 6, 1968, when the holding-over began. In the face of the pending action to evict her and of respondents' repeated protestations against appellant's continued possession, if benefit in fact resulted, it was a voluntary bestowal respondents could hardly have avoided. We find that appellant was not misled nor induced to change her position to her detriment by any inaction or acquiescence of respondents. What she gave, she gave as a volunteer and did not become a tenant by doing so. One holding over has no election to regard herself as a tenant, the election is in the landlord. 49 Am.Jur.2d, Landlord and Tenant, Sec. 1116, p. 1070. Here the landlord made no such election either expressly or impliedly. Accordingly, no notice was required to evict her.

For whatever reason—perhaps as an avail of the more expeditious magistrate court procedure to accomplish what their counterclaim then pending two years had not—on August 18, 1969, respondents filed their complaint in unlawful detainer to recover possession from appellant. Before doing so, however, they served appellant with the "Notice to Quit" to which we have referred. Whatever may have been its intended use, such a ten day notice is a statutory condition precedent to bringing an action for possession under Sec. 441.-040, V.A.M.S., which by its terms presupposes a subsisting landlord-tenant relationship, while no notice or demand is necessary to maintain an unlawful detainer

against a tenant holding over after the end of a fixed term. Anderson v. McClure, 57 Mo.App. 93, 96; Ray v. Blackman, supra. Appellant argues that the notice, therefore, served to "admit * * * a tenancy relationship between the parties as of and prior to July 30, 1969", the date it was served. It was indeed incongruous for one to have been given at all. As arbiters of the facts upon this stipulated record, however, we decline to view the misapplied procedure as an admission of a complex legal relationship, itself decisive of the question presented.

In argument, appellant concedes the rule that a tenant who has come lawfully into possession and then holds over after the expiration of the term without the consent of the landlord does so wrongfully and is at sufferance,[9] but contends, nonetheless, that Sec. 441.060(1) V.A.M.S., requires a month's notice in writing to terminate even a possession. That subsection provides:

"A tenancy at will or by sufferance, or for less than one year, may be terminated by the person entitled to possession by giving one month's notice, in writing, to the person in possession, requiring him to move."

To adopt the meaning for which appellant contends would be to truncate, as to a tenant holding over, the provision of Sec. 441.070, V.A.M.S., that "(n)o notice to quit shall be necessary from or to a tenant whose term is to end at a certain time". It would also have the effect of extending every lease for a definite period for a month or more, at the will of the tenant. See Smith v. Littlefield, 51 N.Y. 539, 542.

The authorities suggest that statutes such as Sec. 441.060(1) undertaking to require notice to terminate a tenancy at (or by) sufferance and which include tenancies at will and others in the same section "are obviously the result of confusion". Ameri-

9. Finney's Trustees v. City of St. Louis, 39 Mo. l.c. 181; Grant v. White, 42 Mo. 285, 289; American Law of Property, Sec. 3.32, p. 235.

can Law of Property, Sec. 3.32, pp. 235–237. Such statutes are grounded on "the mistaken idea * * * that 'sufferance' means 'permission' and that, accordingly, a tenant at sufferance can be terminated only by a notice of a certain number of days". Tiffany, Real Property, 3rd Ed., Vol. 1, p. 280; Tiffany, Landlord and Tenant, Vol. 2, Sec. 196 d, p. 1434. Actually, however, a "tenant at sufferance" is no tenant at all, since he holds over without that very consent of the landlord which is essential to the landlord-tenant relationship. At common law a tenancy at sufferance was only a device to prevent the creation and running of adverse possession by the tenant holding over. In modern law it describes "a class of *possessors who are not tenants but who may be turned into tenants* at the election of the (landlord)". (Emphasis supplied). American Law of Property, Sec. 3.32, p. 236; Underhill, Landlord and Tenant, Vol. 1, Sec. 162, p. 226.

Unlike true tenancies, a "tenant at sufferance" has merely a naked possession and stands in no privity with the landlord,[10] is "the most insecure and most insignificant of all tenures",[11] is not even an estate in land,[12] and because such possession is wrongful that is, lacks permission of the landlord, a claim for constructive eviction cannot be based on it.[13] Such is not the nature of the tenure which, by Sec. 441.060(1), requires a month's written notice to terminate, but only such a possession as results from the consent of the landlord. That statute juxtaposits tenancy at will and those others for less than a year—each of which can arise only from some form of consent—with the tenancy at sufferance. From this we conclude that the "tenancy by sufferance" mentioned in the act, and which requires notice, is not one created simply by holding over a defi-

nite term without the permission of the landlord. To entitle the tenant who holds over a definite term to notice, the continued holding must be with the express consent of the landlord or under such circumstances as will justify implying it. This construction not only reasonably accommodates Sec. 441.060(1) to Sec. 441.070, but also gives them both their intended effect. It also avoids the absurdity of allowing a tenant wrongfully holding over, by that wrong, to entitle himself to an additional month before he may be removed.

Appellant's continued possession after July 6, 1968, was willful, not by the landlord's consent, express or implied. Hers was a tenure strictly at sufferance and she could be turned out of possession without notice. Grant v. White, 42 Mo. 1. c. 289.

The judgment is affirmed.

All concur.

10. Welch v. Rice, 61 Wyo. 511, 159 P.2d 502, 506 [2].

11. Underhill, Landlord and Tenant, Vol. 1, Sec. 162, p. 226.

12. Tiffany, Real Property, 3rd Ed., Vol. 1, p. 34; American Law of Property, Sec. 3.32, p. 236, note 6.

13. Baker v. Simonds, 79 Nev. 434, 386 P.2d 86, 89 [7].