## DRAKE et al., Trustees, Appellants, v. BOARD OF EDUCATION OF ST. LOUIS.

### Division One, December 24, 1907.

1. **LEASE: Renewal: Perpetuity.** A renewal of a lease for all time to come is a perpetuity, which is against the policy of the law. Unless it appears from the covenant in the lease, by express terms or clearly by implication, that the lessees are entitled to have the lease renewed for all time to come, a court of equity will not decree specific performance of the covenant for that purpose.

2. ———: ———: ———: **General Covenant.** A general covenant for the renewal of a lease will not be considered to imply a perpetual renewal, but the most the lessor is bound to give on such a covenant is a renewal for one term only.

3. ———: ———: ———: ———: **Compelling Second Renewal.** The lease was for a term of twenty-five years, and contained this covenant: "It is covenanted and agreed, by and between the parties, that at the end of the term hereby demised, this lease shall be renewable at the option of the lessees, their executors, administrators or assigns; the said lessees, their executors, administrators or assigns, giving to the party of the first part, in every instance, a notice in writing of their wish to renew the same, at least three months before the end of the term, and in case of failure to give such notice, the said lessees shall be entitled to no further renewal of this lease or of the terms thereby created. And every renewal lease shall contain all the covenants, agreements, clauses and stipulations herein contained, with these exceptions only, that the covenants of renewal shall be in conformity with the foregoing provisions." *Held,* to be a general covenant for a renewal, and not to expressly give the lessees the right to compel more than one renewal, and they cannot compel the lessor to execute a renewal lease containing a covenant for further renewals.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*Jos. G. Holliday* and *Geo. L. Neuhoff* for appellants.

(1)   A stipulation in a renewable lease, calling merely, in general terms, for the insertion in the new lease of "all the covenants" contained in the old, without specific enumeration of the particular covenants, is insufficient to compel the insertion of a covenant for renewal in the new lease, there being a presumption (arising from failure to refer specifically to that covenant), that it was not included in the mere general stipulation to insert "all the covenants of ˙ the old lease." Carr v. Ellison, 20 Wend. 178; Diffenderfer v. Board of Education, 120 Mo. 447.   (2) But a clear reference to, or, *a fortiori,* an actual mention of the covenant of renewal by name, in describing the covenants to be inserted in the new lease, will leave no room for the presumption that this covenant was not in the minds of the parties when using the general words "all the covenants in the old lease contained," or their equivalent.   In such a case the court cannot ignore the express call for covenants of renewal to go into the new lease, and the only question remaining is whether, taken together, the general and the specific words of the old lease are sufficient to compel the insertion in the new lease of a covenant for repeated or perpetual renewals, on the one hand, or a bald covenant of mere renewability, that is, for one further term, on the other.   Moore v. Foley, 6 Ves. Jr. 231; Hare v. Burgess, 4 K. & J. 45; Syms v. Mayor, 105 N. Y. 153. (3) In fact, it has long been a common practice among conveyancers, ˙instead of providing directly in the original lease how long these renewals should

go on, to determine the matter by describing the sort of covenant for renewal to be inserted in the new lease. In view of such a custom, recognized by judicial decisions, words expressly naming or describing the covenant of renewal among those to go into the new lease, cannot be left with impunity in a renewal lease, any more than the words "grant, bargain and sell" can be left with impunity in a deed conveying real estate, for they are words to which the law has given a certain function, in the one case by statute, in the other by long usage.    Moore v. Foley, supra; 4 Jarman on Conveyances (3 Ed.), form on p. 567, line 8; on p. 568, line 14.    (4) It being well established that a bald covenant "to renew" a lease means for one more term of like duration, it would seem to follow that a bald stipulation to insert covenants of renewal in the new lease must mean that there shall be inserted in the new lease merely a covenant for one further renewal. Rutgers v. Hunter, 6 Johns. Ch. (N. Y.) 218; Whitlock v. Duffield, 1 Hoffman Ch. 110; Abeel v. Radcliff, 13 Johns. 297; Curry v. Railroad, 58 Kan. 6; Fullmer v. Poust, 155 Pa. St. 275; Stephens v. Ins. Co., 61 Mo. App. 194; Trabue v. Ins. Co., 121 Mo. 75.

*Judson & Green* for respondent.

(1)   The covenant in the lease of 1878 provided for one renewal only, to-wit, that contained in the lease tendered.   Diffenderfer v. Board of Public Schools, 120 Mo. 447; Winslow v. Railroad, 188 U. S. 646; Taylor's Landlord & Tenant (8 Ed.), secs. 333, 334, 343; Jones on Landlord & Tenant, sec. 343; 18 Am. and Eng. Ency. Law (2 Ed.), 687; Richards v. Hunter, 6 Johns. Ch. 215; Riggot v. Mason, 1 Paige 412; Carr v. Ellison, 20 Wend. 178; Ryder v. Jenny, 25 N. Y. Supp. 55; Muhlenbrinck v. Pooler, 40 Hun 526.   (2)   The lease containing a covenant to renew at its expirations with similar covenants, terms and conditions contained in

the original lease is fully carried out by one renewal without the insertion of another covenant to renew. Otherwise a perpetuity is provided for. Cases supra. (3) There are no specific words in the lease giving the right to two successive renewals, and none can be inferred from the terms of the printed form applicable to renewals when granted. Leake on Contracts (5 Ed.), p. 145; Clark v. Woodruff, 83 N. Y. 518.

WOODSON, J.—The facts of this case are agreed to, and, as they are substantially and tersely stated in brief of counsel for respondent, we will adopt their statement as the statement of the facts in the case, which is as follows:

"The controversy in this case was submitted under section 793, Revised Statutes 1899, without formal pleadings as an agreed case without action, and involved the single question as to the construction of the right of renewal under a certain lease made by the respondent, the Board of Education of the City of St. Louis, of certain property in City Block 88, of the city of St. Louis, on November 13, 1878, for a term of twenty-five years, to the late Gerard B. Allen, under whose will the appellants are the testamentary trustees. The original term of twenty-five years having expired, and the right to a renewal reserved in the original lease having been perfected by proper notice by appellants, the respondent tendered a renewal lease for a further term of twenty-five years without any covenant of *further renewal*. Appellants refused to accept this renewal lease as a performance of the renewal covenant in the original lease, and therefore this proceeding is in effect for a specific performance of the covenant of renewal reserved in the original lease of November, 1878, and involves the construction of that covenant.

"The lease in question was drawn on one of the printed forms used by the respondent which was made

to suit the particular case by cancellation of various parts and writing in the blank spaces of the printed form. The covenant of renewal as set forth in the agreed statement of facts is as follows:

" 'And it is covenanted and agreed, by and between the said parties, that at the end of the term hereby demised, this lease shall be renewable at the option of said parties of the second part, their executors, administrators or assigns; the said party of the second part, their executors, administrators or assigns, giving to the party of the first part, in every instance, a notice in writing of their wish to renew the same, at least three months before the end of the term, and in case of failure to give such notice, the said parties of the second part shall be entitled to no further renewal of this lease or of the terms thereby created. And every renewal lease shall contain all the covenants, agreements, clauses and stipulations herein contained, with these exceptions only, that the covenants for renewal shall be in conformity with the foregoing provisions, and that the annual rents reserved on every renewal shall be six per centum upon the value of the demised premises, exclusive only of improvements placed thereon by said lessee or their legal representatives, if any, which value shall be estimated by two disinterested freeholders,' etc.

"Respondent conceded that under this covenant appellants were entitled to a renewal lease for twenty-five years, commencing November 7, 1903, but denied the right of appellants to have inserted in said renewal lease any clause whatever relating to a further renewal of the lease. Respondent, therefore, tendered to appellants a lease, being 'Exhibit C,' as filed with the agreed statement, and claims that the same was a full compliance with the covenant of renewal. Appellants refused to accept this, and demanded a lease with a covenenat for one further renewal, and this

proceeding was brought for the adjustment of this difference. The circuit court held that the appellants were only entitled to the lease tendered, that is, to a renewal lease for them of twenty-five years with no covenant for further renewal, and entered judgment accordingly. Appeal was duly perfected.''

Appellants present the following assignment of errors, to-wit:

''1. The lower court erred in holding that appellants are entitled only to a new lease for twenty-five years commencing November 7, 1903, without further renewal. Said new lease should itself be renewable for at least one more like term, in accordance with the express provisions of the original lease.

''2. The lower court erred in giving no effect whatever to the following express words occurring right in the covenant for renewal of the original lease here sued upon, specifying what sort of covenant of renewal (actually naming that covenant) shall go into the new lease, to-wit: 'The covenant for renewal shall be in conformity with the foregoing provisions.' (The said 'foregoing provisions' here referred to being provisions relating to the sort of notice to be given in case of renewal.)''

I. In the consideration of this case it should be constantly borne in mind, as stated by this court in the case of Diffenderfer v. Board of Public Schools, 120 Mo. 454 and 455, that a renewal of the lease for all time to come is to create a perpetuity, which is against the policy of the law and which it does not favor; and it is further stated that ''unless it appears from the covenant in the lease, by express terms or clearly by implication, that plaintiffs are entitled to have the lease renewed for all time to come, a court of equity will not decree specific performance of the covenant for that purpose.''

208 Sup—35

The respondent does not deny the right of the appellants to have one renewal of the lease, but does contend that they are not entitled to have inserted in that renewal a covenant for any additional renewal. This contention of the respondent is denied by appellants, and they insist that under the express provisions of the lease they are entitled to at least two, if not perpetual renewals, that is to say, they are entitled to the renewal conceded by respondents, and have the right to have inserted in the new lease a covenant for at least one other renewal.

Appellants base their claim to that right upon the following provisions contained in the original lease, to-wit: "And it is covenanted and agreed by and between the said parties that at the end of the term hereby demised this lease shall be renewable at the option of said parties of the second part, their executors, etc. The said party of the second part, their executors, etc., giving to the party of the first part, in every instance, a notice in writing of their wish to renew the same, etc., and in case of failure to give such notice, the said parties of the second part shall be entitled to no further renewal of this lease or of the terms hereby created. And every renewed lease shall contain all the covenants, agreements, clauses and stipulations herein contained, with these exceptions only, that the covenants for renewal shall be in conformity with the foregoing provisions," etc. From this it is argued by appellants that they would be entitled to one renewal by the use of the general words, "this lease shall be renewable," found in the first clause of the paragraph of the lease above quoted, even though no other language regarding renewals had been found therein.

And they further contend that by the insertion of the following additional covenant or agreement in the lease, to-wit: "in every instance a notice, etc., and every renewed lease shall contain all the covenants, agree-

ments, clauses and stipulations herein contained, with these exceptions only, that the covenants for renewal shall be in conformity with the foregoing provisions," etc., just after the general covenant above mentioned, shows that it was in the minds of the parties and that it was their intention and understanding that more than one renewal was provided for.

This contention of appellants is presented with much force and plausibility and the following authorities are cited in support thereof.

In the case of Syms v. Mayor, 105 N. Y. 156, the city of New York, on April 10, 1810, executed to Peter Lorillard a lease demising to him certain premises for a term of thirty years ending on the last day of May, 1840. The lease was executed by both parties, and in it the city agreed that at the expiration of the term it would demise the premises to him, his assigns, etc., "for and during the term of twenty-one years, thereafter, with a like covenant for future renewals of the lease as is contained in this present indenture." In 1839 Lorillard assigned the lease to John Syms, who thus became substituted in his place. In April, 1840, the city executed a lease of the same premises to John Syms for another term of twenty-one years, in which it covenanted that at the expiration of the lease, to-wit, May 1st, 1861, it would again demise the premises "in pursuance of this present lease . . . for and during the term of twenty-one years thereafter, upon such rents as shall be agreed upon." On April 20, 1861, the city executed a third lease to John Syms for twenty-one years from May 1, 1861; that lease contained no covenant for renewal, and in it Syms covenanted that at the end of that term he would peaceably and quietly leave, surrender and yield up to the city or its successors or assigns all of the demised premises. Syms died in 1868, having some years before erected a valuable building upon the premises. In 1880, the city sold the

premises to John B. Haskin. Thereafter, in October, 1880, the plaintiffs, as executors of Syms, commenced a suit, alleging in their complaint, among other things, the facts before stated, and prayed that the city be adjudged to reform the leases dated April, 1840, and April, 1861, by inserting therein a covenant for a future renewal of twenty-one years from May 1, 1882, and that the sale to Haskin be set aside, and the plaintiffs be given a renewal lease for twenty-one years from May 1, 1882. The verdict was for defendant. Upon those facts, EARL, J., speaking for the court, said: "We are of the opinion that the verdict was properly directed. The lease executed in 1810 should not be so construed as to create a perpetuity. Its language is satisfied by holding that it gave the lessee the right to two renewals, and those renewals were subsequently given; and it must be assumed that the parties so understood the first lease. The two renewals signed by both parties gave that lease a practical construction which should have great weight with any court called upon to ascertain its meaning and effect."

In the case of Carr v. Ellison, 20 Wend. 178, Ellison leased the premises to one Corwin for a term of twenty-one years from May 1, 1793, at a certain yearly rent. By the lease Corwin covenanted that on or before the first day of November, 1793, he would, at his own expense, erect on the premises a two-story frame house, and at the end of the term would surrender same to Ellison. It was agreed that the buildings to be erected by Corwin should at the end of the term be appraised, and Ellison covenanted that he would pay Corwin the appraised value, "or he, the said Thomas Ellison, his heirs or assigns, shall renew the lease unto the said William Corwin, his executors, administrators or assigns, for the term of twenty-one years more, for and under the same yearly rents, and under the same covenants as is hereinbefore granted." Corwin, and

afterwards the defendants under him, entered and held the premises under the lease, and paid the stipulated rent down to the first of May, 1835, the end of the second term of twenty-one years, but it did not appear that the lease was in fact renewed at the end of the first term, in 1814. The defendants insisted that the lease had in effect been renewed in 1814 by the act of the parties, with the same covenants as those contained in the original lease; and in April, 1835, they called on the plaintiff to appoint an appraiser and to pay the value of the buildings which the lessee had erected on the lot, or to renew the lease for another term of twenty-one years with the like covenants as those contained in the original lease. The plaintiff refused to do either and after the expiration of the second term of twenty-one years, in May, 1835, brought suit for the possession of the premises. The judgment was for the plaintiff, and defendants sued out a writ of error. The Supreme Court, in passing upon the case, speaking through BRONSON, J., said: "On the construction for which the plaintiffs in error contend, the lessor covenanted in case the value of the buildings was not paid for a perpetual renewal of the lease; in other words, he agreed to renew the covenant for a renewal, as well as the other covenants contained in the lease. The courts lean against such a construction of the contract as will lead to a perpetuity, and will not infer an agreement for a second renewal from a general provision for a renewal of the lease with similar covenants. The parties did not, I think, contemplate more than two terms of twenty-one years. . . . The good sense of the contract seems to be this: the lessee agreed to erect a frame house on the premises, and the lessor stipulated to pay him the value of the building at the end of the term, or to compensate him by a renewal of the lease 'for the term of twenty-one years more.' "

To the same effect are the following cases: Moore v. Foley, 6 Ves. Jr. 231; Hare v. Burges, 4 K. & J. 45.

The respondent, however, contends that the rule announced in the foregoing cases is not applicable to the facts of this case, and is not the law of this State, and that under the authorities in this State the covenant of renewal in the lease in question is in legal effect the same as that contained in the lease construed in the case of Diffenderfer v. Board of Public Schools, 120 Mo. 447. In order that the covenants of the two leases may be easily and conveniently compared, we will place them in parallel columns and inclose with brackets the provisions found in the Allen lease, the one involved in the case at bar, and which are not contained in the Diffenderfer lease, which are as follows:

*Diffenderfer Lease.*

"And it is covenanted and agreed, by and between said parties, that at the end of the term hereby demised, this lease shall be renewable, at the option of the party of the second part, his executors, administrators or assigns, he or they giving to the party of the first part, in every instance, a notice in writing of his or their wish to renew the same, three months, at least, before the end of the term. And every renewed lease shall contain all the covenants, agreements, clauses and stipulations, with this ex-

*The Allen Lease of 1878.*

"And it is covenanted and agreed by and between said parties, that at the end of the term hereby demised this lease shall be renewable, at the option of said parties of the second part, their executors, administrators or assigns, said parties of the second part, their executors, administrators or assigns, giving the party of the first part, in every instance, notice in writing of their wish to renew the same, at least three months before the end of the term; [In case of failure to give such notice, the said par-

ception 'only, that the annual rents to be reserved on every renewal shall be six per centum upon the value of the demised premises, exclusive of any improvements t h e r e o n placed, which value shall be estimated by the public assessor of the city of St. Louis, for the time being, at the commencement of the renewed term, and to be paid quarterly."

ties of the second part shall be entitled to no further renewal of this lease or of the terms thereby created]. . And every renewed lease shall contain all the covenants, agreements, clauses, and stipulations herein contained, with these exceptions only [that the covenants for renewal shall be in conformity with the foregoing provisions], and that the annual rents reserved on every renewal shall be six per cent. upon the value of the demised premises, exclusive only of improvements," etc. [Then follow provisions for ascertainment of the value by the selection of freeholders, one by each party and they to select a third, if not agreeing.]

It will be observed by reading the Diffenderfer lease that the covenant of renewal provides that "this lease shall be renewable," and that "in every instance" a notice shall be given, "and that every renewed lease shall contain all the covenants, agreements, clauses and stipulations herein contained, with this exception only."

The Allen lease contains all the covenants just quoted from the Diffenderfer lease, and in addition contains the following provisions which are not found in that lease, to-wit: "in case of failure to give such notice,

the said parties of the second part shall be entitled
to no further renewal of this lease or of the terms
thereby created," and "that the covenants for renewal
shall be in conformity with the foregoing provisions."

We have here pointed out the distinctions between
the two leases, and we will now state the ruling of this
court upon the latter, and then see if the same reason-
ing will apply to the covenant of renewal found in the
Allen lease.

In disposing of the Diffenderfer case, this court,
speaking through BURGESS, J., used this language: "All
that is said in the covenant for a renewal of the lease
for more than one term of fifty years, either by implica-
tion or otherwise, is as follows: 'And every renewed
lease shall contain all the covenants, agreements, claus-
es and stipulations herein contained, with this excep-
tion only, that the annual rents to be reserved on every
renewal shall be six per centum on the value of the de-
mised premises,' etc. Do the words 'and every renewal'
as used and when used in the lease clearly show that the
lessors intended to covenant for a renewal of it for more
than one term? In Piggot v. Mason, 1 Paige Ch. 412,
it was held, that the holder of an original lease was
not entitled to a covenant for renewal in the new lease,
as that would create a perpetuity. And a lease should
not be so construed. [Syms v. Mayor, 105 N. Y. 153;
Carr v. Ellison, 20 Wend. 178; Banker v. Braker, 9 Abb.
N. C. (N. Y.) 414; Rutgers v. Hunter, 6 Johns. Ch. 215;
Whitlock v. Duffield, Hoffman's Ch. (N. Y.) 110.] So
it has been said that a covenant which does not plainly
imply or express a perpetual renewal, will not be con-
strued to give this right. [1 Taylor on Landlord and
Tenant, sec. 334.] In Carr v. Ellison, 20 Wend. 178, it
is held that a covenant to renew a lease under the same
covenants contained in the original lease, is satisfied by
a renewal of the lease, omitting the covenant of renewal.
There being no clear words in the covenant for renewal

in this case, nor any words relative to a perpetual renewal, we are constrained to hold that the words, 'and every new lease shall contain all the covenants, agreements, claims, and stipulations,' as used in the first clause, in the absence of more positive stitpulation than the covenant of renewal, means only a second lease and not a perpetuity of leases. [Moore v. Foley, 6 Ves. Jr. 231.] Had it been otherwise intended, and the lease had been one of perpetuity at the pleasure of the lessees, it is not unreasonable to presume that some such provision would have been made in the lease."

And the Supreme Court of the United States, in the case of Winslow v. Railroad, 188 U. S. 654, in discussing this same question, uses this language: "It is quite plain that a lease containing a covenant to renew at its expiration with similar covenants, terms and conditions contained in the original lease is fully carried out by one renewal without the insertion of another covenant to renew. Otherwise a perpetuity is provided for."

Mr. Taylor, in his valuable work on Landlord and Tenant, states the rule as follows: "Nor will a general covenant for renewal be considered to imply a perpetual renewal; the most a lessor is bound to give on such a covenant is a renewal for one term only. A covenant to renew a lease 'under the same covenants contained in the original lease' is satisfied by a renewal of the lease for another term, omitting the covenant to renew; for if the continued grant of successive leases and not a single renewal only had been intended, words, it was said, would naturally have been made use of indicating such intention. A different construction would virtually lead to a grant in perpetuity; and where no consideration appears for a grant of so extensive a nature, such cannot be a reasonable construction. . . . A covenant which does not plainly imply or express a perpetual renewal will not, as we have said, be construed

to give this right." [1 Taylor on Landlord and Tenant (8 Ed.), secs. 333, 334.]

The same rule is announced in Jones on Landlord and Tenant, sec. 343, and in 18 Am. and Eng. Ency. Law (2 Ed.), 687, and cases cited.

This is unquestionably the rule in this country, and it seems to us to be supported by the better reason and by the greater weight of authority; and we are, therefore, clearly of the opinion that the conclusions reached by this court in the Diffenderfer case were correct. And if there are no covenants to be found in the Allen lease materially different from those contained in the former, then the same results should be reached in this case; but counsel for appellants insists that such covenants do exist in the Allen lease, and point out the two following clauses (which will hereafter be referred to as first and second) which he says are not to be found in the Diffenderfer lease, to-wit:

1. "In case of failure to give such notice the said parties of the second part shall be entitled to no further renewal of this lease or of the terms hereby created."

2. "The covenants of renewal shall be in conformity with the foregoing provisions."

By reading the provisions in the Diffenderfer lease we find this language: "This lease shall be renewable at the option of the party of the second part, his executors, administrators or assigns, he or they giving to the party of the first part, in every instance, a notice in writing of his or their wish to renew the same, three months, at least, before the end of the term." While there is no express statement in the Diffenderfer lease to the effect that the failure to give the notice of renewal would bar all rights of renewal, as is stated in the Allen lease, yet the clause just quoted from the former, namely: "this lease shall be renewable, at the option of the party of the second part . . . he or they giving to the party

of the first part . . . a notice in writing of his or their wish to renew the same three months at least before the end of the term," have exactly the same meaning as the language contained in the first clause above quoted from the Allen case. While the wording of the two clauses is not the same, yet their meaning is clearly identical. The meaning of each is that if the notice is not given, as required, then the right of renewal is forever forfeited. The only difference in the two clauses is, the Allen lease in express terms provides for the forfeiture, while the other makes the same provision by clear and necessary implication. The legal effect of each is the same.

It is next contended by counsel for appellants that the language used in the second clause above quoted from the Allen lease is wholly different from any provision found in the Diffenderfer lease, and that it in express and specific words provides for covenants of renewal to go into the new leases. Those words are as follows:

Second. "The covenants for renewal shall be in conformity with the foregoing provisions."

The clause immediately preceding the words just quoted is in the following words: "And every renewal lease shall contain all the covenants, agreements, clauses and stipulations *herein contained.*" These words clearly refer back to the previous general covenant of renewal, which is in the following language: "And is it covenanted and agreed by and between said parties that at the end of the term herein demised this lease shall be renewable at the option of said parties of the second part. Now, by reading the second clause before mentioned, in light of the above quotations, it seems clear that it refers back to the general covenant of renewal last above quoted, because there is not to be found in the entire lease any other covenant of renewal, and for that reason the words "herein contained,"

above italicized, must of necessity refer to that general covenant; and this is made still clearer by reading in this connection the 2nd clause before mentioned, which is as follows: "that the covenants for renewal shall be in conformity with the foregoing provisions." To what do the words "the foregoing provisions" refer? Clearly to the general covenant of renewal before mentioned, because, as before stated, there is no other covenant of renewal contained in the Allen lease. The same general covenant of renewal is contained in the Diffenderfer lease, and is in the following words: "And it is covenanted and agreed by and between said parties that at the end of the term hereby demised, this lease shall be renewable, at the option of the party of the second part," etc.

So it is thus seen that the covenants of renewal contained in the two leases mentioned are identically the same in meaning. That being true, and we think there can be no doubt as to the correctness of that conclusion, then the construction placed upon the Diffenderfer lease by this court is equally applicable to the lease in question. In that case this court held that the lessee was entitled to but one renewal, and we think the same is true of the lessee in the case at bar, and we will not infer an agreement for a second renewal from a general provision for a renewal of the lease with similar covenants.

We are, therefore, of the opinion that the trial court correctly construed the lease, and for that reason the judgment is affirmed.

All concur.