

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

WEST 39TH STREET, LLC, )
 )
  Respondent, )
 )
 v. ) WD86445 (Consolidated with
 ) WD86575, WD86597, WD86707,
 ) WD86840)
 )
LINA, LLC, ) Opinion filed:  November 5, 2024
 )
  Appellant. )

**APPEAL FROM THE CIRCUIT COURT OF
JACKSON COUNTY, MISSOURI
THE HONORABLE BRYAN ROUND, JUDGE**

Division Two:  Alok Ahuja, Presiding Judge,  Edward R. Ardini, Jr., Judge
and W. Douglas Thomson, Judge

Lina, LLC appeals from the trial court's declaratory judgment finding that a "Lease Addendum" was void and unenforceable because it provided for perpetual renewal options and violated the restraint against alienation.  Lina brings four points on appeal.  First, Lina argues the trial court erred in finding the Lease Addendum void and unenforceable because perpetual lease renewals are enforceable in Missouri.  Second, Lina argues the trial court erred in finding the Lease Addendum violated the doctrine of restraint against alienation because such

does not apply to leases. Third, Lina argues there was no substantial evidence to support the trial court's finding that the Lease Addendum is an unreasonable restraint against alienation. Finally, Lina argues that the trial court erred in not reforming the Lease Addendum upon finding it void and unenforceable. We reverse and remand for entry of a judgment consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

This appeal addresses the enforceability of a commercial lease addendum ("Lease Addendum") that permits Lina, LLC ("Lina"), the tenant, an infinite option to renew the lease. West 39th Street, the landlord who initially negotiated and entered into the Lease Addendum with Lina, filed a declaratory judgment petition asking the trial court to declare the Lease Addendum void and unenforceable. The trial court found the Lease Addendum was void and unenforceable because it was an unreasonable restraint against alienation.

Lina rents commercial space from West 39th Street and operates a pizza restaurant from that commercial space. Lina began renting commercial property from West 39th Street in 2014. At the time, West 39th Street was owned and operated by Juan Lopez, who, until purchasing property along 39th Street, had never owned or managed commercial real estate. At the time Lina first rented commercial space from West 39th Street, it was not equipped to operate a business. Lina spent 10 months transforming the empty commercial space into a pizza restaurant.

In December 2015, the parties began experiencing issues in their professional relationship.[1]

Lina expanded the pizza restaurant in 2016 and entered into a lease for the adjacent storefront. Lina again invested significant funds into improving the new space, including installing a HVAC system, upgrading the bathrooms, and building a patio. In total, Lina spent approximately $300,000 improving the new space with fixtures and equipment that will remain with the space even if Lina no longer leases it.

Because Lina invested funds in the property, Lina sought assurance that West 39th Street would continue to lease the property to Lina. Together, the parties negotiated and drafted the Lease Addendum. As part of the Lease Addendum, Lina agreed in part to install and maintain the HVAC system for the commercial property. Lina and West 39th Street entered into the Lease Addendum, which states:

> This lease addendum is to grant Lina LLC/Joseph Perez (owner) a one year to one year *indefinite option for lease extensions* for [the Commercial Property] going into affect [sic] after the date: June 29, 2023 (the end of the current lease terms.)

> This lease extension will follow the current leases for [the Commercial Property]. All landlord stipulations, permissions, and penalties will apply accordingly from the existing leases originally signed in 2016 for both spaces.

> The lease extension allows Lina LLC/Joseph Perez to renew both leases when the current lease options and terms expire in 2023, to *infinite 1 year*

[1] The parties sued each other for various causes of action related to this breakdown in their relationship. A jury trial was held to resolve those claims. Neither party challenges the jury's verdict in this appeal.

*extension options*, ongoing until tenant notifies Landlord.  The tenant will have the ability to occupy the space at [the Commercial Property] under the ongoing terms until a 60 day non-renewal letter has been issued to the Landlord that he no longer wishes to exercises his rights of renewal.

The rent rate for the ongoing lease extensions in [the Commercial Property] will continue to stay the same as the current ending rate on the date of 6/29/23 as shown below:

| | |
|---|---|
| [Commercial Property]. KC, MO | $3,500 |

| | |
|---|---|
| The rent rate for the ongoing lease extensions in [Commercial Property will increase by $60.00/year. | [Commercial Property] KC, MO $1,560.00 |

Mr. Perez will assume the responsibility of installing and maintaining the HVAC system for both [the Commercial Property] throughout the duration of his lease term.  Landlord agrees to contribute $3500.00 as a reduction of rent to offset the cost of the HVAC system.

This rent rate will continue to stay the same as above year after year as the tenant continues to exercise their year to year lease term renewal.

If the addresses are to be sold as individual parcels, Lina LLC/Joseph Perez has the first right of refusal to purchase [the Commercial Property].

(emphasis added).  Both parties signed the Lease Addendum.

When the relationship between West 39th Street and Lina began to sour once again, West 39th Street hired a management company to oversee its holdings. The management company advised West 39th Street the Lease Addendum was not beneficial to it.  Thereafter, West 39th Street filed the aforesaid declaratory judgment action seeking a declaration that the Lease Addendum was void and unenforceable.  The trial court determined the Lease Addendum was an unreasonable restraint on alienation because there was "no plainly evident

economic purpose" for the infinite renewal option. The trial court also rejected Lina's argument that the rule against restraints on alienation does not apply to leases, finding the rule applies to leases.

This appeal follows.

## II.    STANDARD OF REVIEW

"The standard of review in declaratory judgment cases is the same as in any other court-tried case." *Kerperien v. Lumberman's Mut. Cas. Co.*, 100 S.W.3d 778, 780 (Mo. banc 2003). "This Court will affirm the decision of the trial court 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Id.* (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "Where a misapplication of the law is asserted, our review is *de novo*." *Jackson v. Mills*, 142 S.W.3d 237, 240 (Mo. App. W.D. 2004).

## III.    ANALYSIS

Lina brings four points on appeal, listed above.[2] We find Points I and II dispositive because we find the trial court erred in determining the Lease

---

[2] Before we address the merits of Lina's arguments, West 39th Street argues that both Lina's statement of facts and Points Relied On violate Rule 84.04.

Rule 84.04(c) requires a statement of facts that "shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument." West 39th Street argues that Lina's statement of facts is argumentative because it "consists largely of irrelevant evidence" and Lina's appeal should be dismissed. West 39th Street does not cite any particular statements of fact that it believes is argumentative nor provides this Court with its own statement of facts. Upon review, we do not find Lina's statement of facts argumentative. Lina's statement of facts complies with Rule 84.04(c).

Addendum is void and unenforceable. Therefore, Lina's Points III and IV are moot and not addressed.

## A.   POINT I

In Point I, Lina argues that the trial court erred in ruling the Lease Addendum void and unenforceable because it contains "perpetual lease renewal extensions."

"The cardinal rule in contract interpretation is to ascertain the intention of the parties and to give effect to that intention." *Armstrong Bus. Servs., Inc. v. H & R Block*, 96 S.W.3d 867, 874 (Mo. App. W.D. 2002). "Unless the contract is ambiguous, the intent of the parties is determined based on the contract alone, not on extrinsic or parol evidence." *Id.* "In determining whether a contract is ambiguous, words should be given their natural and ordinary meaning." *Id.* "A contract is ambiguous if its terms are reasonably open to more than one meaning,

---

West 39th Street also argues that each of Lina's points relied on violates Rule 84.04(d) for various reasons. West 39th Street argues that Lina's Points I, II, and IV violate Rule 84.04(d) because each "fail to make any effort to state any legal reasons for a claim of reversible error." We disagree. For example, Lina's first point states in full:

> The trial court erred in ruling that the Lease Addendum providing perpetual lease options is void and unenforceable which *misapplies the law* because Missouri law supports the enforcement of perpetual leases where, as here, the parties' intent is clear and the language in the lease is unambiguous regarding indefinite extensions, in that the trial court held the Lease Addendum was void and unenforceable because it contained perpetual lease renewal extensions.

(App. Brief at 11) (emphasis added). Plainly, Lina argues in Point I that the trial court misapplied the law in finding the Lease Addendum void and unenforceable because it contained a perpetual lease renewal option. West 39th Street responded to each of Lina's points relied on and thus understood them. We find each of Lina's points relied on comply with Rule 84.04(d) and decline to dismiss this appeal for briefing deficiencies.

6

or the meaning of the language used is uncertain." *Id.* "A contractual provision is not ambiguous merely because the parties disagree over its meaning." *Id.*

Generally, "[c]ovenants for perpetual renewal are valid when clearly expressed." *Blackmore v. Boardman*, 28 Mo. 420, 425 (Mo. 1859) (holding a lease stating that the lease was renewable "so on from time to time perpetually" created an enforceable perpetual option to renew); *see also Preferred Physicians Mut. Mgmt. Grp., Inc. v. Preferred Physicians Mut. Risk Retention Grp., Inc.*, 961 S.W.2d 100, 103 (Mo. App. W.D. 1993) ("The Supreme Court has made clear that, to be enforceable, a contract which purports to run in perpetuity must be adamantly clear that this is the parties' intent."); *Haeffner v. A.P. Green Fire Brick Co.*, 76 S.W.2d 122, 126 (Mo. 1934) ("Under the law in this state and generally, a lease is not made void by reason of covenant of perpetual renewal."). Recently, this Court has discussed perpetual contractual obligations:

> Missouri courts 'are prone to hold against the theory that a contract confers a perpetuity of right or imposes a perpetuity of obligation.'" *Armstrong Business Servs., Inc. v. H & R Block*, 96 S.W.3d 867, 875 (Mo. App. 2002) (quoting *Paisley v. Lucas*, 346 Mo. 827, 143 S.W.2d 262, 270 (1940), *overruled in part by Novak v. Baumann*, 329 S.W.2d 732 (Mo. 1959)). "'[A] renewal of the lease for all time to come is to create a perpetuity, which is against the policy of law and which it does not favor[.]'" *Drake v. Bd. of Educ. of St. Louis*, 208 Mo. 540, 106 S.W. 650, 652 (1907) (citation omitted). "A contract will not be construed to confer a right or impose an obligation in perpetuity unless the language of the contract compels such construction." *Armstrong*, 96 S.W.3d at 875; *Superior Concrete Accessories, Inc. v. Kemper*, 284 S.W.2d 482, 490 (Mo. 1955). "The intention to create a perpetual contract must be unequivocally expressed." *Armstrong*, 96 S.W.3d at 875. A lease in perpetuity will not be found "'unless it appears from the covenant in the lease by express terms or clearly by implication that plaintiffs are entitled to have the lease renewed for all time to come[.]'" *Drake*, 106 S.W. at 652 (quoting *Diffenderfer v. Bd. of President, etc., of St.*

7

*Louis Pub. Schools*, 120 Mo. 447, 25 S.W. 542, 544 (1894)). Thus, "[b]ecause the law discourages perpetuities, and does not favor covenants for continued renewals, 'a covenant which does not plainly imply or express a perpetual renewal will not be construed to give this right.'" *Kilbourne v. Forester*, 464 S.W.2d 770, 773 (Mo. App. 1970) (citations omitted).

*K.C. Air Cargo Servs., Inc. v. City of Kansas City*, 523 S.W.3d 1, 10-11 (Mo. App. W.D. 2017) (emphasis added).

Therefore, in order for the Lease Addendum to confer a perpetual option to renew, the language of the Lease Addendum must state, by its express terms or by implication "that [Lina is] entitled to have the lease renewed for all time to come[.]" *Drake*, 106 S.W. at 652. The Lease Addendum states in relevant part:

> This lease addendum is to grant Lina LLC/Joseph Perez (owner) a one year to one year *indefinite option for lease extensions* for 900 & 902 W 39th Street going into affect [sic] after the date: June 29, 2023 (the end of the current lease terms.)
>
> \*\*\*
>
> The lease extension allows Lina LLC/Joseph Perez to renew both leases when the current lease options and terms expire in 2023, to *infinite 1 year extension options*, ongoing until tenant notifies Landlord. The tenant will have the ability to occupy the space at 900 and 902 under the ongoing terms until a 60 day non-renewal letter has been issued to the Landlord that he no longer wishes to exercises his rights of renewal.

(emphasis added).

To determine whether the Lease Addendum grants Lina a perpetual option to renew, we must interpret two phrases from the Lease Addendum: "*indefinite option for lease extension*" and "*infinite 1 year extension options.*" Both "indefinite" and "infinite" use the prefix "in," which also means "not." For example, Merriam-Webster defines "indefinite" as "not definite: such as not

8

precise" or "having no exact limits." Similarly, "infinite" is defined by Merriam-Webster as "subject to no limitation or external determination;" "extending beyond, lying beyond, or being greater than any preassigned finite value however large." Simply, "indefinite" means without a definite limit, and "infinite" means without a finite limit. Comparatively, Merriam-Webster defines "perpetual" as "continuing forever;" "occurring continually: indefinitely long-continued." While the Lease Addendum does not explicitly use the word "perpetual," when read in total "indefinite" and "infinite" "plainly imply" the parties' intent to grant Lina a perpetual option to renew. *See Kilbourne*, 464 S.W.2d at 773. One cannot fathom a manner of distinguishing "perpetual" and "infinite" in this instance. By its plain language, the Lease Addendum compels such construction and grants Lina the option to renew the lease as many times as Lina wants, i.e., perpetually.

Even if the Lease Addendum were rendered ambiguous by the use of "indefinite" and "infinite", it is clear the parties intended to grant Lina a perpetual option to renew. Neither party disputes that the Lease Addendum creates a perpetual option to renew. Evidence at trial indicated that Lina wanted the Lease Addendum because it had made significant improvements to the Commercial Property and wanted to ensure it could remain at the Commercial Property long-term. The parties drafted the Lease Addendum together and both signed it understanding that the Lease Addendum granted Lina a perpetual option to renew. West 39th Street acknowledged at trial that the Lease Addendum grants Lina a perpetual option to renew at Lina's discretion and that West 39th Street executed

the Lease Addendum. Accordingly, both parties clearly intended to create a perpetual option to renew the lease.

Further, this Lease Addendum is clearly distinguishable from contract provisions that Missouri courts have determined do *not* create a perpetual contract obligation. *See Armstrong Bus. Servs., Inc.*, 96 S.W.3d at 877 (finding that franchise agreement stating in part, "The term of this Agreement shall run for a period of five years from the date hereof, with further provisions that it shall be automatically renewed for successive periods of five years each, unless mutually terminated" did not create perpetuity because it was mutually terminable); *Haeffner*, 76 S.W.2d at 126 (holding a lease that granted lessee the right to renew "as long as paying minerals are found" does not create a perpetual lease); *K.C. Air Cargo Servs., Inc.*, 523 S.W.3d at 11 (finding that the lease clause, "At the end of the Lease Term, Lessee shall be given the opportunity to lease the Premises at the then fair market rental rate or the rental rate which has been offered to the City by another party, whichever is higher" did not create a perpetual option to lease but permitted a single renewal).

Here, unlike in each of the above contracts, the Lease Addendum unequivocally grants Lina "infinite" options to renew the lease. The Lease Addendum is distinguishable from *Armstrong*, because it is not mutually terminable. Instead, pursuant to the Lease Addendum negotiated by the parties, Lina holds all control over the option to renew and has "the ability to occupy the space at 900 and 902 under the ongoing terms until a 60 day non-renewal letter

has been issued to the Landlord that he no longer wishes to exercises his rights of renewal." The Lease Addendum is also distinguishable from *Haeffner* because, by the Lease Addendum's plain language, it does not merely create an indefinite option to renew the lease, but rather as the parties testified, by using "infinite" and "indefinite" they intended to provide perpetual options to renew. Finally, the plain language of the Lease Addendum clearly does not grant Lina only one opportunity to renew the lease, unlike in *K.C. Air Cargo Services*.

In short, we agree with the parties and the trial court that the Lease Addendum grants Lina a perpetual option to renew the lease. Even West 39th Street concedes that Missouri law permits perpetual renewals: "This black letter law [stating perpetual contracts are enforceable when clearly expressed] is undisputed but irrelevant to this appeal. The question is not whether the law might permit a perpetual contract or perpetual renewals in some circumstances. Of course it might." (Resp. Brief at 23). Rather, to West 39th Street, the real issue in this appeal is whether the trial court erred in determining that the lease was void and unenforceable because it constitutes an unreasonable restraint on alienation. This issue is addressed in Point II below.

Because the Lease Addendum grants Lina perpetual options to renew and, as both parties concede, such perpetual contracts are enforceable when clearly expressed, we find that the Lease Addendum is not void and unenforceable because it creates a perpetuity. Point I is granted.

## B.  POINT II

Lina argues in Point II that the trial court erred in ruling the Lease Addendum is void and unenforceable because it constitutes an unreasonable restraint on alienation.  Lina argues that the rule against restraints on alienation does not apply to leases, and thus the trial court misapplied the law when determining the Lease Addendum was void and unenforceable.  Lina rightfully points out that no Missouri case applies the rule against restraints on alienation to leases.  Our review of Missouri cases and the law of other jurisdictions demonstrates that perpetual leases are an exception to both the rule against perpetuities and the rule against restraint on alienation.  We agree with Lina.

"The rule against perpetuities fixes the time within which a future interest must vest, while the rule against restraints on alienation is to prevent the inalienability of present or future vested interests." *Kershner v. Hulbert*, 277 S.W.2d 619, 623 (Mo. 1955).  Under common law, perpetual leases are an exception to the rule against perpetuities and the rule against restraints on alienation. *See Bleecker St. Tenants Corp. v. Bleeker Jones LLC*, 945 N.E.2d 484, 484-85 (N.Y. 2011) ("We hold that the rule against perpetuities does not apply to options to renew leases."); *Lonergan v. Conn. Food Store, Inc.*, 357 A.2d 910, 913 (Conn. 1975) ("[I]t is well settled in most other jurisdictions that, absent a statutory provision to the contrary,[3] the right to perpetual renewal of a lease is not

---

[3] Although Missouri statutorily provides for some limitations on the term of leases and the manner of lease renewal with certain governmental entities, the parties direct us

forbidden by the law, either upon the ground that it creates a perpetuity or a restraint on alienation or upon any other ground, and such provisions, when properly entered into, will be enforced."); *Lattimore v. Fisher's Food Shoppe, Inc.*, 329 S.E.2d 346, 348 (N.C. 1985) ("The generally accepted view is that a covenant for perpetual renewals is not forbidden by law and will be enforced by the courts."); *Hull v. Quanah Pipeline Corp.*, 574 S.W2d 610, 612 (Tex. Civ. App. 1978) ("It has been generally held that a provision in a lease for perpetual renewal is not violative either of the rule against perpetuities or of statutes limiting the period during which the absolute power of alienation may be suspended."); *Pechenik v. Baltimore & O. R. Co.*, 205 S.E.2d 813, 815 (W. Va. 1974) ("The fact that perpetual leases are not favored does not mean that they are contrary to public policy. They have long been recognized as valid and binding in this State."); *Pults v. City of Springdale*, 745 S.W.2d 144, 146 (Ark. Ct. App. 1988) ("The right to perpetual renewal of a lease is not forbidden by law, either upon the ground that it creates a perpetuity or a restraint on alienation, or upon any other ground, and such provisions, when properly entered into, will be enforced.").

Although no Missouri case has expressly adopted the common law rule, Missouri case law stating that perpetual leases are enforceable, so long as they are sufficiently explicit, necessarily implies that the rule against perpetuities and rule against restraint on alienation do not apply to enforceable perpetual leases. For

---

to no similar statutory limitation applicable to the situation at hand, nor did our search find one.

the same reasons courts in other states have found these rules do not apply to enforceable perpetual leases in their states, it would be inconsistent and illogical to say that clearly expressed perpetual options to lease are enforceable in Missouri, yet find that such perpetual options to lease violate the rule against perpetuities and the rule against restraints on alienation.[4] West 39th Street argues that the perpetual option to renew is a restraint on alienation because such a provision would potentially affect the value of the entire commercial property should West 39th Street wish to sell it. Pursuant to that argument, we note that all lease agreements represent a restraint on alienation because such agreements run with the land and could potentially affect the value of a property. In other words, West 39th Street restrained alienation of its commercial property when it decided to lease it. Such is not a persuasive argument to apply the rule against restraint on alienation to the Lease Addendum at issue in this case.

West 39th Street summarily cites several cases that they claim find that perpetual leases are subject to the rule against restraint on alienation. However, a close review of these cited cases discredits West 39th Street's argument. For example, West 39th Street cites *Winecellar Farm, Inc. v. Hibbard*, 27 A.3d 777, 787-88 (N.H. 2011) in which the New Hampshire Supreme Court found the trial court did not err in determining a farm lease *was not perpetual* and then

---

[4] Lina argues that the rule against perpetuities and the rule against restraint on alienation do not apply to *any* lease. We find it unnecessary to consider whether the rules apply broadly to every lease. Instead, we hold in this opinion that such rules do not apply to *enforceable perpetual* leases.

determined the farm lease, as written, violated the rule against restraint on alienation. *Id.* We are unpersuaded by *Winecellar Farm, Inc.* as it did not involve a perpetual lease.[5] As such, the New Hampshire Supreme Court's decision in *Winecellar Farm, Inc.* is not at odds with our decision today that the rule against restraints on alienation does not apply to perpetual leases.[6]

West 39th Street also directs us to three Missouri cases involving unreasonable restraints on alienation that the trial court cited in its Judgment. *See Kershner v. Hurlburt*, 277 S.W.2d 619 (Mo. 1955); *Mo. State Highway Comm'n v. Stone*, 311 S.W.2d 588 (Mo. Ct. App. 1958); *Cole v. Peters*, 3 S.W.3d 846 (Mo. App. W.D. 1999). None of these cases are clearly applicable here, as none apply the rule against restraint on alienation *to leases*.

Notably, each of the Missouri cases to which West 39th Street cites involve contracts that allowed a party to purchase property at an inadequate, specific price.

---

[5] Notably, the New Hampshire Supreme Court even distinguished the farm lease from a commercial lease, stating that unlike the farm lease at issue in *Winecellar Farm, Inc.*, in a business context as we have in the instant case, a "continual renewal term did not foreclose the landowners from selling the premises, stating, 'It is not unreasonable to believe that potential buyers may desire to purchase a business that is already fully in operation and occupied by a paying tenant.'" *Id.* at 788 (quoting Pope v. Lee, 879 A.2d 735, 746 (N.H. 2005)).

[6] West 39th Street's other citations are similarly unpersuasive. *See Epsetive v. Zahloute*, 222 P.2d 318, 319 (Cal. Dist. Ct. App. 1950) (finding a perpetual lease violates a California statute stating that government-owned land cannot be leased for a period extending beyond 99 years); *Warren St. Assoc. v. City Hall Tower Corp.*, 202 A.D.2d 200, 200-01 (N.Y. App. Div. 1994) (stating the general rule that the rule against perpetuities does not apply to leases, but finding that the lease at issue was subject to a narrow exception because it permitted lessee to exercise its option *after* the end of the express lease term). Both cases are clearly distinguishable from this case, as West 39th Street does not argue that the Lease Addendum violates any statute nor argues the Lease Addendum permits Lina from exercising its option after the initial lease term concludes.

Such contracts creating preemptive rights *directly restrict* a property owner's power to convey the property: the property owner is expressly *prohibited* from selling the property at a fair market value.  In this case, in contrast, West 39th Street does not contend that Lina's right to perpetually renew the lease *directly restricts* West 39th Street's power to alienate the property; instead, West 39th Street contends that Lina's renewal rights may *indirectly* affect the economics of any future property sale.

Courts in other states have recognized a distinction between *direct* and *indirect* restraints on alienation.

> [A] "direct restraint on alienation is a provision in a deed, will, contract, or other instrument which, by its express terms, or by implication of fact, purports to prohibit or penalize the exercise of the power of alienation." *Spanish Oaks, Inc. v. Hy-Vee, Inc.*, 655 N.W.2d 390, 399 (Neb. 2003). Direct restraints on alienation include such things as "prohibitions on transfer without the consent of another, prohibitions on transfer to particular persons, requirements of transfer to particular persons, options to purchase land, and rights of first refusal." RESTATEMENT (3D) OF PROPERTY: SERVITUDES § 3.4 comment b (2000)

*Lamar Advertising v. Larry & Vickie Nicholls, L.L.C.*, 213 P.3d 641, 644 (Wyo. 2009).  On the other hand,

> [a]n indirect restraint on alienation arises when an attempt is made to accomplish some purpose other than the restraint of alienability, but with the incidental result that the instrument, if valid, would restrain practical alienability. . . . Ordinarily an indirect restraint does not restrict the power of alienation but only the fact of alienability.

*Carma Developers (Cal.), Inc. v. Marathon Devmt. Cal., Inc.*, 826 P.2d 710, 725 (Cal. 1992) (citation omitted).  While a *direct* restraint on alienation must satisfy a "reasonableness test," *indirect* restraints on alienation are only invalid if they

16

"'lack[ ] a rational justification.'" *Lamar Advertising*, 213 P.3d at 645 (quoting RESTATEMENT (3D) OF PROPERTY: SERVITUDES § 3.5 (2000)).

In this case, Lina's perpetual right to renew its lease does not "prohibit or penalize the exercise of [West 39th Street's] power of alienation" – therefore, it does not constitute a *direct* restraint on alienation. Instead, at worst, the renewal right may have the incidental effect of restricting West 39th Street's power of alienation as a practical matter, because a buyer may discount the property's value due to Lina's lease rights. But that *indirect* restraint on alienation plainly had a rational justification: Lina wished to protect its substantial investments in improving and maintaining the property. Even if the rule against unreasonable restraints on alienation applied to Lina's renewal rights in some fashion, the trial court misapplied the law by finding Lina's renewal rights to be invalid.

The trial court's Judgment also cited one case from Florida. In *Peavey v. Reynolds*, 946 So.2d 1125 (Fla. Dist. Ct. App. 2006), the parties entered into a commercial lease that "automatically" renewed every two years "for as long as tenant desires." *Id*. at 1126. Landlord sought a declaratory judgment that the lease was void and unenforceable because it violated the rule against restraints on alienation. *Id*. The Florida court did not consider, nor did either party raise, whether the lease created a perpetuity. Instead, the Florida court found that, based on the circumstances of the lease, it constituted an unreasonable restraint on alienation because the lease explicitly bound subsequent landlords to the lease

17

provisions.[7] *Id.* at 1127. We find this case distinguishable and inapplicable to the issues presented by the Lease Addendum here as it did not address a perpetual lease.

In short, neither West 39th Street nor the trial court cites any persuasive authority stating that the rule against restraints on alienation should apply to perpetual leases. As discussed above, the general rule exempts perpetual options to renew leases from both the rule against perpetuities and the rule against restraints on alienation. The policy concerns discussed throughout West 39th Street's brief highlights the law's wariness toward perpetual leases, and this court is mindful of them. However, the law is clear that, when the parties clearly intend and do in fact agree to a lease in perpetuity, the law will enforce such contract's terms. This is precisely the type of contract West 39th Street entered into with its tenant, Lina, and now seeks to avoid as it *now* finds the Lease Addendum it previously negotiated not beneficial. As Missouri courts have long stated, "'Courts of law must allow parties to make their own contracts, and can enforce only such as they actually make. Whether the contract is wise or unwise, reasonable or unreasonable, is ordinarily an immaterial inquiry.'" *Blaine v. George Knapp & Co.*, 41 S.W. 787, 789 (Mo. 1897) (quoting *Zaleski v. Clark*, 44 Conn. 218, 223 (Conn. 1876)). "[W]e remind [subsequent lessor] that the freedom to contract includes the

---

[7] The Florida court cited to a single Delaware case that it claims calls into question perpetual options to renew leases. *See Wilmington Parking Authority v. Ranken*, 105 A2d 614, 634 (Del. 1954). That case, however, involved the duration of a contract with a municipality subject to the rule that such leases must be "reasonable" in duration. *Id.* A similar rule does not, in Missouri, summarily apply to all commercial leases.

freedom to make bad decisions." *Venture Stores, Inc. v. Pacific Beach Co. Inc.*, 980 S.W.2d 176, 183 (Mo. App. W.D. 1998) (citing *Gott v. First Midwest Bank of Dexter*, 963 S.W.2d 432, 439 (Mo. App. W.D. 1998) ("[t]he general rule of freedom of contract includes the freedom to make a bad bargain.") (internal citations and quotations omitted)).

The trial court misapplied the law in determining the Lease Addendum violates the rule against restraints on alienation. Lina's Point II is granted.[8]

## IV.   CONCLUSION

The trial court's judgment is reversed and remanded for entry of a judgment consistent with this opinion.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

---

[8] Lina's Point III argues that, should we determine the rule against restraints on alienation applies to the Lease Addendum, the evidence was insufficient to prove that the Lease Addendum unreasonably restrained West 39th Street's alienation of the property. Having determined the rule against restraints on alienation does not apply to perpetual leases, we need not address Lina's third point.

Likewise, Lina's Point IV argues that the trial court erred in not applying equitable principles of reformation and/or unjust enrichment when it found the Lease Addendum void and unenforceable. Because we determined the trial court erred in determining the Lease Addendum was void and unenforceable, we need not address Lina's fourth point.